## CONLEY *v.* MAHER.

| 93  | 781 |
| s109 | 642 |
| 93  | 781 |
| 114 | 474 |

1. The execution levied being against a principal debtor and two sureties, and having been levied upon the principal's property, the levy itself reciting that it was made to satisfy the interest of one of the sureties (naming him) to the extent of the payment made by him and entered on the *fi. fa.*, and the principal, more than three years afterward, having filed an affidavit of illegality in resistance to the enforcement of the levy, setting up that the *fi. fa.* was fully paid off on a given date intermediate the date of the levy and the date of the affidavit, if the payment proved at the trial satisfied and extinguished the *fi. fa.* as to all interest of the surety for whose benefit the levy, according to its own terms, was made, the affidavit was well founded and should have been sustained.

2. The receipt and acceptance by a mortgagee of one half of the fine imposed upon the mortgagor of personalty as a punishment for fraudulently selling the mortgaged property, operates by express provision of the statute (Code, §4601) to extinguish the debt to secure which the mortgage was executed. The term "debt," as used in the statute, embraces interest as well as principal; and the mortgagee cannot accept any of the proceeds of the criminal sentence without submitting to have his whole debt thereby extinguished, whether his share of the proceeds in fact equals the aggregate of principal and interest or not. In this case, the debt, as between the mortgagor and the mortgagee, was the whole amount which the latter was compelled to pay and did pay to the creditor of the mortgagor upon the debt on which the mortgagee was one of the sureties of the mortgagor, the mortgage having been executed to indemnify and protect the mortgagee on account of his suretyship.

June 30, 1894.

Illegality.  Before Judge MARSHALL J. CLARKE.  Fulton superior court.  March term, 1893.

D. P. HILL, A. A. MANNING and W. R. HODGSON, for plaintiff in error.  ARNOLD & ARNOLD, *contra*.

LUMPKIN, Justice.

Thornton brought an action of bail-trover against Conley, and Maher, Buck and some other persons became sureties for Conley on the bail-bond.  Conley executed and delivered to Maher a mortgage on personalty to indemnify him against loss by reason of his said suretyship, the mortgage further providing that if a judgment should be rendered against Conley in the trover case, Maher should be at liberty to seize and take possession of the mortgaged property for the benefit of himself and cosureties on the bail-bond, and deliver the same into court, etc.  Thornton recovered a judgment against Conley and execution was duly issued, upon which Maher, as surety, on May 28, 1888, paid $3,076.49, and Buck, one of the other sureties, on June 16, 1888, paid $2,926.57.  Afterwards, Conley disposed of the mortgaged property without reimbursing his sureties, and for so doing was prosecuted to conviction by Maher and fined in the sum of $6,152.98, which he paid into court.  In fixing the sentence, which, under the law, had to be double the sum or debt which the mortgage was given to secure, the court, as will have been seen, took into consideration the amount only which had been paid by Maher, the prosecutor, and not the amount which had been paid by Buck.  Buck was no party to the criminal prosecution and refused to take part in it.

On May 28th, 1890, the sheriff paid Arnold & Arnold, attorneys for Maher, one half of the fine which Conley had paid into court, these attorneys acknowledging in writing that the payment to them by the sheriff was made under authority of section 4601 of the code, though

not receiving it in complete extinguishment of Maher's claim. Maher thus received the identical amount he had paid upon the execution against Conley; but his reimbursement being exactly two years, to a day, from the time he had paid out the money, his contention is that he is entitled to enforce the execution against Conley for the interest which had accrued during these two years, and all interest subsequently accruing. Accordingly, he caused the execution to be levied upon Conley's property, the levy reciting that it was made " to satisfy the interest of one of the sureties, Michael E. Maher, to the extent of the payment made by him and entered on the attached *fi. fa.*" The date of this levy, as appears by the record, was May 14th, 1888; but as the payment which it recites had been made by Maher was in fact made on May 28th, 1888, there must be some mistake in the date of the levy. This, however, is not material, because it is perfectly manifest from the record that Maher certainly did not cause a levy to be made on Conley's property until after he (Maher) had paid the $3,076.49. To this levy Conley, on June 22, 1891, filed an affidavit of illegality, alleging that the *fi. fa.* was fully paid off, satisfied and extinguished by him on May 28th, 1890, this being the date when Maher, by his attorneys, received one half of the fine.

Upon the facts stated, the court directed the jury to find for the plaintiff, Maher. Conley moved for a new trial on various grounds, and his motion being overruled, he excepted.

1. Although it cannot be literally true, as stated in Conley's affidavit of illegality, that the execution was fully paid off by him, because there is no pretense that Buck has been reimbursed one cent of the money paid by him, still we think the affidavit should be construed solely with reference to Maher's claim upon the execution, Buck not being a party to the levy nor to the

present case, and the real and only issue being whether, as between Maher and Conley, the former has been fully reimbursed all he was entitled to claim upon the execution. If, therefore, Conley succeeded in proving at the trial that he had satisfied and extinguished the execution as to all the interest therein of Maher, for whose benefit alone the levy was made, the illegality was well founded and ought to have been sustained.

2. We will now proceed to inquire whether Conley did establish that Maher's claim upon the execution was in law fully extinguished and satisfied. According to section 4601 of the code, when, in a case of this kind, the fine has been imposed and collected, one half of it should be paid over to the holder of the mortgage, " and the payment shall extinguish the debt to secure which the mortgage was executed." As between Conley and Maher, the debt was the whole amount which Maher was compelled to pay and did pay to Thornton, the creditor of Conley, together with interest upon the amount so paid. We entertain no doubt that the term " debt," as used in the section just cited, embraces interest as well as principal. It was undoubtedly the right of. Maher to insist upon both principal and interest; but if he chose to avail himself of the method provided by that section for the collection of his debt, he was bound to accept one half of the fine in full satisfaction of his entire debt, including both the principal and the interest. It does not matter that one half the fine was not enough to pay the entire amount due him by Conley. There is no authority of law for allowing him to accept one half of the fine as a credit upon his debt or in part payment of the same. The meaning of the statute is clear and unequivocal, that if he accepts one half of the fine at all, he must do it in extinguishment of his debt; and therefore, by such acceptance, he necessarily submits to the cancellation of his entire debt.

It may be that in fixing the amount of the fine the court should have added the interest of the debt, and then made the fine double the amount thus produced. This, however, was not done, and Maher had the option to accept one half of the fine imposed in full satisfaction of his demand, or to refuse to accept it and take his chances to collect his debt otherwise. It appears, therefore, in the view we take of the law, that the affidavit of illegality was sustained, so far as Maher is concerned; and instead of directing a verdict for him, the court should have directed a verdict in favor of Conley.

As Buck is not a party to the present case, we express no opinion as to his interest in the matter. Whether or not he was a beneficial party to the mortgage executed by Conley, and whether or not in fixing the fine against Conley the amount paid by Buck on the execution should have been taken into consideration by the court, are questions not now before us.

*Judgment reversed.*