## BOOTH *et al. v.* STATE OF GEORGIA *et al.*

1. Where, pending a receivership, the result of an equitable suit by the State against an insolvent bank, an intervention is filed by the State, alleging that the bank at the time of its failure was indebted to the State in a certain amount, and said indebtedness was entitled to a preference over other debts due by the bank, and praying for a judgment of the court establishing such preference and requiring the receiver to pay off such indebtedness out of money in his hands as assets of the bank, to which intervening petition certain creditors, depositors of the bank, who are duly made parties to said suit, file their answer, denying any priority in favor of the State's claim, and setting up other facts as matters of defense, and a hearing is had, and upon the evidence submitted a judgment is rendered, in vacation before the appearance term, upon the issues thus made by the pleadings, establishing the priority of the debt due the State, and ordering the receiver to pay over to the State treasurer money in his hands as assets of the bank on said debt, such judgment is not interlocutory, but final in its nature, and is void for want of jurisdiction in the court to render the same.

2. The State is entitled to priority of payment out of the assets of an insolvent bank which is a State depository, as against individual creditors and depositors. There is nothing in the act creating State depositories, or the acts amendatory thereof, that changes or modifies this right of the State.

3. Acts of negligence or wrong conduct, even if such exist, on the part of a State officer can not be pleaded as an estoppel to prevent the State from asserting its right to collect a debt.

4. An intervening creditor in an equitable suit takes the pleadings as made by the original party as he finds them when made a party thereto; and where it appears that there has been a waiver of process by appearance and pleading to the original suit, he can not urge the objection that there is no process or waiver of the same.

5. In ordinary suits in law or equity, failure to state in the petition to what term of the court the same is returnable would not authorize the dismissal of the case.

6. A petition in equity that asks for the appointment of a receiver to take charge of an insolvent bank and to wind up its affairs, and also prays for a judgment allowing the State bank examiner, who is in charge of the bank, to retain money out of the assets of the bank to pay off a debt claimed by the State, is not subject to the criticism that no final judgment is asked or relief prayed for.

*Argued November 23,—Decided December 16, 1908.*

Equitable petition. Before Judge Ellis. Fulton superior court. February 21, 1908.

The directors of the Neal Bank, a corporation doing a banking business in Fulton county, Ga., voluntarily placed said bank in the hands of the State bank examiner, R. E. Park, who took charge of its affairs, and after investigation reported to the Governor that the bank was not in a position to resume business and liquidate its indebtedness. Under instruction from the Governor, the attorney-general, in behalf of the State, instituted suit in Fulton superior court, for the appointment of a receiver to take charge of the affairs of said bank, and to wind up its business for the benefit of its depositors, creditors, and stockholders. This suit was predicated on an act of the General Assembly approved August 22, 1907, and was filed on the 24th day of December, 1907, and was answered by the Neal Bank on the same day, in which answer the facts alleged in the petition were admitted to be true, and the defendant joined in the prayer for a receiver. The court appointed the Central Bank & Trust Corporation receiver to take charge of said bank on the 9th of January, 1908. The State filed an intervention in said suit, alleging that said bank was a State depository, and was at the time of its failure indebted to the State in the sum of $204,375.98, of which sum $192,502.90 was money deposited by the State treasurer, and $11,871.08 was deposited by the tax-collector of DeKalb county as taxes due the State. This intervention on the part of the State set up the claim that this indebtedness was a preferred claim and a superior lien on the assets of the bank, and the prayer was made that the court direct and authorize the receiver to pay to the State treasurer the amount of this indebtedness out of the funds in his hands as assets of the bank. Upon this petition a rule nisi issued, call-

ing upon the receiver to show cause on the 13th day of January, 1908, why the prayer should not be granted. To this intervention of the State S. Booth et al., as creditors and depositors of said bank, filed their answer, denying that the State was a preferred creditor, and setting up other facts as matter of defense why said money should not be paid out as asked for by the State. Before the merits of the case were passed upon, counsel for Booth et al. moved the court: (1) To defer and postpone the hearing, because the case was not ripe for hearing, the same being a petition for final judgment and decree for the distribution of money, and the court having no authority to pass a final judgment and decree in vacation, or before the trial term of the case in which the intervention was filed. (2) To dismiss the original bill, because there was no process attached, and no process prayed for; and because said case was not made returnable to any term of the court. (3) To dismiss the intervention of the State, for the same reasons above stated. All of these several objections were overruled, and the court proceeded to hear the case on its merits. Upon hearing, after evidence submitted, the court rendered judgment in favor of the State, adjudicating that the State had a preference or lien on the assets of the bank, superior to depositors and creditors, to the extent of $192,502.90, and that the receiver pay this amount, deducting the amount due on a note of the State, held by the receiver, for the sum of $25,000. Upon this decree error is assigned, upon the ground that the same was contrary to law and to evidence, and also upon several grounds based upon the contentions of the plaintiffs in error that the judgment rendered was not interlocutory, but final in its nature, and that the court had no authority to render the same in vacation before the trial term of said case. This judgment was rendered in vacation prior to the trial term, and prior to the appearance term. The case was filed less than 20 days before the January term of Fulton superior court.

Upon the hearing of said intervention the following was proved: The Neal Bank was a State depository under the laws of Georgia. Said bank was placed in the hands of the State bank examiner. The Central Bank & Trust Corporation was appointed its receiver on December 24, 1907. At the time of the appointment of said receiver the State of Georgia had to its credit on deposit in

said bank, subject to check, the sum of $192,502.90. On March 1, 1904, the Neal Bank was commissioned as a State depository in the city of Atlanta, by order of the Governor, for a term of four years. Said bank qualified and gave bond, in terms of the law, in the sum of $100,000, and entered upon the performance of its duties, and acted under such commission from March 1, 1904, up to December 23, 1907, and gave no additional bond. R. E. Park was State treasurer and State bank examiner, and as such bank examiner had not made or caused to be made any examination of the Neal Bank since September 10, 1906. R. E. Park as said bank examiner was causing an examination to be made of the Neal Bank on December 19, 20, and 21, 1907. On said dates the bank examiner, by his two assistants, was in the Neal Bank, and while they were making their said examination of said bank, R. E. Park, as State treasurer, deposited in said bank, on December 20, 1907, the sum of $85,432.96, and on December 21, 1907, the sum of $10,521.35; and on this last-named date the depositors made a run on said bank, and it suspended payment and closed its doors. The Neal Bank had made large and excessive loans to its officers and to companies in which its officers were interested. The State treasurer as State bank examiner had these facts reported to him, in an examination made September 10, 1906, in the following language: "We have called attention to these large loans before, and find that they have greatly increased since this bank was examined several months ago, and we have given due caution against such large loans in our advisory capacity. Representation as to the character of these loans appears favorable, but they are evidently too difficult to speedily convert into cash. We always advise against such loans, however well secured. It is not prudent nor legitimate banking. This is one of the few family banks in Georgia which imagine they can take greater liberties and privileges than others, but we do not concur in this opinion." At the time R. E. Park as State treasurer deposited money in the Neal Bank on December 20 and 21, 1907, the Neal Bank had loans past due, amounting to $328,468.21, maturing from 1892 to 1907. The capital of the Neal Bank was $100,000. The State of Georgia was indebted to the Neal Bank in the sum of $50,000 on December 21, 1907. This indebtedness was represented by two promissory notes of $25,000 each, of date August 22, 1907, exe-

cuted by the Governor of Georgia. One of these notes was hypothecated by the Neal Bank, and had been paid by the State of Georgia since said bank went into the hands of a receiver. The State of Georgia had a contract with the Neal Bank to receive 2 per cent. as interest on its daily balances of deposit. Objecting intervenors, S. Booth et al., were made parties plaintiff in the original case by proper order of the court, and were depositors in said bank. The Neal Bank was insolvent, and at the time of the deposits made by the State was doing a general banking business; and at the time the judgment was rendered, awarding to the State the money in controversy, a dividend of 20 per cent. was ordered paid to the general depositors. The report of the receiver showed that there was sufficient money in hand to pay these several claims without detriment to the interests of the insolvent bank, and raised no objection to paying the same. The note of the State for $25,000, referred to as having been paid since the bank failed, was transferred before maturity by the bank and for value received. The report of the treasurer referred to was made December 24, 1907, after the failure of the bank.

*R. B. Blackburn, F. M. Hughes, E. P. Upshaw,* and *Walter R. Brown,* for plaintiffs.

*John C. Hart, attorney-general, Candlers, Thomson & Hirsch,* and *Westmoreland Brothers,* for defendants.

Justice Lumpkin being disqualified, Judge Lewis, of the Ocmulgee circuit, was designated to sit in his stead.

LEWIS, J. 1. The assignment of error is made that this judgment is void, upon the ground that the court had no authority to render the same. The assignment raises a question of jurisdiction. If the judgment was merely interlocutory in its nature, and not final, or such a judgment that the excepting party can not review by direct bill of exceptions, the court did have jurisdiction, and the case would be prematurely in the Supreme Court. On the other hand, if it is final in its character, and a judgment reviewable by direct bill of exceptions, the court had no jurisdiction to render the same in vacation before the case was ripe for hearing at some term of the court. It is true for some purposes courts of equity are always open; but we take it as a well-settled rule that neither a court of law nor equity has jurisdiction to pass a judgment final in its nature, adjudicating and settling the sub-

stantial rights of the parties litigant, before the case has reached some term of the court when it is triable. In ordinary suits the second term after filing suit is the trial term, unless the parties by consent in equity causes make the appearance term the trial term. Even by consent jurisdiction can not be conferred upon the court to hear and dispose of, by judgment, a case that has never reached the appearance term. The superior courts can hear and determine in vacation certioraries, motions for new trial, and all such other matters as they can hear and determine in term time, that do not require a jury, upon proper notice and application. Civil Code, §4323-4. There must be, however, some term of the court at which the case is ripe for trial, before any judgment can be made finally disposing of the case. In equity, as well as law, the court has no jurisdiction in vacation, except what is expressly conferred by law. Civil Code, §4325. We see nothing in the act of 1907 (Acts 1907, p. 85), upon which the original suit is based, asking for a receiver, that takes this case out of the ordinary rules of procedure in equity causes; certainly no authority is given the court by the act, and no jurisdiction conferred, that courts of equity did not have before the passage of the act. See, in this connection, *Ivey* v. *City of Rome,* 129 *Ga.* 286 (58 S. E. 852); *Lochrane* v. *Equitable Loan Co.,* 122 *Ga.* 433 (50 S. E. 372). In *Akerman* v. *Moon,* 81 *Ga.* 688 (8 S. E. 321), a receiver had been appointed upon an estate, and several creditors had intervened. The matter was referred to a master for a report as to the priority of liens, etc. The petitioner applied to the court for an order directing the receiver to pay her claim, alleging that it was the highest in rank of all unpaid claims; and this was substantiated by the report of the master. On demurrer by several holders of inferior liens, the petition was dismissed. This judgment was reversed on exceptions taken thereto, the court holding that the receiver should have been directed to pay the amount of the claim. It will be noted in this case there had been a report by a master, confirmed by the court, as to the priority of the liens; and there was nothing left but to pay off the claims according to the priority of the liens established by a final judgment. In *Hawkins* v. *Dale,* 95 *Ga.* 512 (20 S. E. 304), a receiver was appointed for a sawmill, and later, at chambers, an order was granted allowing Hawkins to intervene, and directing that, upon his giving bond, all the

property described in the original petition be delivered to him. Subsequently Dale, Dixon & Co. presented a petition to the judge in chambers, alleging that part of the property belonged to them and not to the receiver. The receiver only was cited to show cause, and upon his answer an order was passed decreeing that the receiver and Hawkins deliver the specified property to Dale, Dixon & Co. upon their giving bond. The property not being delivered, Hawkins was cited for contempt, and upon his answer was discharged as to this feature of the case, but the order decreeing that the property be delivered to Dale, Dixon & Co. was allowed to stand. Upon exceptions by Hawkins, it was held that this order was void, in that Hawkins had not been given notice of the proceeding to dispossess him of the property which he held under the first order of the court. The judgment was reversed, and on a second trial a *consent order* was taken by the parties in term time, that the case be heard in vacation without a jury, upon ten days notice to each party; and it was held on the second writ of error (100 *Ga.* 6) *that the consent order was essential to give the judge jurisdiction to dispose of the matter in vacation.* The real question involved is, whether or not this judgment is merely interlocutory in its nature, or final in its nature. Counsel for both parties seemed to treat it as a final judgment that can be reviewed under a direct bill of exceptions, and therefore not interlocutory. We are clearly of the opinion that this view is correct. It is difficult sometimes in actions on the equity side of the court, especially in cases of receivership, to determine whether an order is administrative in its character, resting in the sound discretion of the chancellor, or final in its nature. To be final it does not necessarily mean that the judgment disposes of the entire case. A judgment may be rendered separable from a judgment disposing of the entire case, and yet be a judgment that is final as to some of the substantial rights of the parties as contended for in their pleadings. It is final when, as to the subject-matter of the judgment, any of the substantial rights of the parties litigant are finally settled by the judgment. It then fails to be merely an administrative order, lying in the discretion of the court, and open for modification at any time. While it is true a wide discretion is given a court of equity in passing interlocutory decrees and orders, only administrative in their character, looking

to the collection of money and the protection and preservation of property, and preparatory to and for the purpose of expediting and reaching a final judgment disposing of the entire case, yet there is a limit to this discretion, and a point beyond which if the court goes, the judgment loses its interlocutory character, and becomes a final judgment in the sense that the court has no jurisdiction to render the same in vacation. Without discussing the limits of this discretion at length, there is a rule which clearly fixes the nature of this judgment as a final judgment, and therefore void, as the court had no jurisdiction to render the same in vacation before the trial term. If the judgment is a final disposition of the case, or, if the excepting party had been successful in the court below, the judgment would have been a final disposition of the case, it is a final judgment to all intents and purposes. Civil Code, § 5526; *Mechanics Bank* v. *Harrison*, 68 *Ga.* 463; *Lochrane* v. *Equitable Loan Co.*, supra. Applying this test to this judgment, it was in no sense merely interlocutory, but final and conclusive as to the subject-matter of the same. The contention of the State under the pleading was, that the State had a prior lien or preference for the debt due it by the bank, and it asked for a judgment establishing this priority and directing the receiver to pay off the indebtedness. The plaintiffs in error, contesting creditors in the court below, denied this claim of priority, and set up other facts as matters of defense, and resisted the rendition of a judgment to pay off the State's claim. The court settled by this judgment these issues raised by the pleadings, under the evidence submitted. The judgment as to the priority of the State's claim over other creditors, and as to the disposition of the $192,502.90 ordered to be paid to the State, was a final disposition of the case. Only one other issue was left in the case, and that was whether the balance of $11,871.08 claimed by the State was a debt due the State. It was as much a final judgment as it would have been had this issue also been settled by the court; the only difference being, had this issue also been determined, it would have been a *final* disposition of the case as made by the State's intervention and the answer thereto. It was a judgment as to the subject-matter of the same, finally adjudicating and settling the rights of the parties litigant under the pleadings; and if the plaintiffs in error had been successful in their contention

under the pleadings in the court below, it would have been a *final disposition* of the entire case made by the intervention and the answer thereto. The judgment, being final in its nature, and not merely interlocutory, was void for want of jurisdiction in the court to render the same in vacation. However correct we may regard the conclusion of the learned judge in the court below in his construction of the law, the judgment was rendered at the wrong time, and we are constrained to reverse the same for the reasons above stated. See also, in this connection, Central Trust Co. *v.* Grant Locomotive Works, 135 U. S. 207 (10 Sup. Ct. 736, 34 L. ed. 97).

2. We are, however, clearly of the opinion that the court was correct in the conclusion reached as to the priority of the State's claim and as to the failure of the contesting creditors, Booth et al., to set up any valid defense under the facts, contesting the right of the State to have its indebtedness paid off out of funds in the hands of the receiver. Under the common law the sovereign right of the State to priority of payment out of the effects of an insolvent existed. *Robinson* v. *Bank of Darien,* 18 *Ga.* 66 (7). It was held in this decision that this priority not only existed, but that it was a wholesome right, and such as should receive the sanction and approbation of the courts. As stated also in this opinion, this principle was adopted by an act of the legislature of 1784. We know of no law that contravenes this general proposition. There is nothing in the original act, or the acts amendatory thereof, establishing State depositories and providing for bonds and rules for regulating such depositories, that abrogates or modifies in any way this sovereign right of priority on the part of the State. This, however, is not an open question. In the case of *Seay* v. *Bank of Rome,* 66 *Ga.* 609, the original act providing for the appointment of State depositories, and providing for a bond in the sum of $50,000, came under review. Under this act there was no limit as to the amount of funds the State could deposit. In this case the court held that preference in favor of the State's claim as against individual creditors extended to all the assets of the bank, notwithstanding the additional security of a bond given by the bank, and was good for an amount due the State over and above the amount of the bond. This original act was amended (Acts 1903, p. 32), limiting the amount of deposit by the State

to the amount of the bond given by the bank, and providing for a larger bond to cover fully the amount deposited. Evidently the primary object of this amending act, as well as the act of 1907 providing for a State bank examiner, etc., was to require and secure additional protection and security for the State's money in the various banks established as State depositories; but there is nothing in the various acts referred to that would justify the inference that it was the purpose of the legislature to abrogate or change the law, as it existed prior to the passage of these acts, giving the State a priority as to debts over individual creditors and depositors of an insolvent bank.

It was the contention further of the creditors, Booth et al., in the court below, that the State, having deposited an amount in the bank greater than the amount of the bond given by the bank, should be forced to proceed on the bond against the bank and its surety for the excess, and should be held as estopped in this proceeding as to this balance. As stated, this bond was required only as additional security, and in no way changed the priority of the State's claim on all the assets of the bank. The State had a right to exhaust its remedy against the principal before going on the surety. There was really no breach of the bond if there was money in the hands of the receiver belonging to the principal to pay the State its indebtedness.

3. There is no merit in the defense set up that the State is estopped from asserting its claim by reason of certain alleged acts of negligence or wrong conduct of the bank examiner. Even if the acts alleged constituted negligence or misfeasance, it is a well-settled principle that the State can not be estopped from asserting its right, on account of negligence or illegal conduct of its officers, and can only be estopped by legislative act or resolution. *Alexander* v. *State, 56 Ga.* 479 (7), 491.

4. There was no merit in the motion of the plaintiff in error, urged in the court below, to dismiss the original bill and the intervention filed by the State, upon the ground that there was no process attached, and no process prayed for, and because said case was not made returnable to any term of the court, and no judgment of relief was prayed for. Prior to the time the intervention was filed by Booth et al., an answer to the original bill was filed by the

Neal Bank, admitting the allegations of the petition by the State, and joining in the prayer for a receiver. This answer was an implied waiver of process and service. Civil Code, §4981, provides . that "Appearance and pleading shall be a waiver of all irregularities of the process, or of the absence of process, and the service thereof." See also *Gay* v. *Cheney,* 58 *Ga.* 304; *Saffold* v. *Foster,* 74 *Ga.* 752; *DeLeon* v. *Heller,* 77 *Ga.* 740. The intervenors who were made parties plaintiff to this original suit were parties to the pleadings as they found them. They found an implied waiver of process, and there was no merit in their objection.

5. There was no error upon the part of the court in refusing to dismiss the original suit and the intervention of the State, upon the ground that the same was not made returnable to any term of the court. The law makes the case returnable to the next term of court after the lapse of a certain time from the date of filing the suit.

6. Nor is there any merit in the contention of the plaintiffs in error that the case ought to have been dismissed for the reason that there was no prayer for any judgment or relief. There was in the original suit against the bank a prayer for a judgment appointing a receiver to wind up the affairs of the bank, and also for a final judgment allowing the State bank examiner as treasurer to retain assets of the bank in his hands sufficient to pay off the indebtedness claimed by the State.

But apart from the merits of these preliminary motions, for reasons already set forth, the court had no jurisdiction in vacation, before the appearance term, to dispose of the case by final judgment. The judge reached the correct result, but at the wrong time. The judgment must be reversed; but as the facts were not disputed and the errors alleged to have been committed were solely errors of law, and as the nature of the case, large public interests being involved, demands a speedy disposition, direction is given that the premature judgment be entered in term time, if at the time of entering the same the case before the court be not materially changed. *Ivey* v. *City of Rome,* supra.

*Judgment reversed, with direction. All the Justices concur, Lewis J., sitting instead of Lumpkin, J., disqualified.*