# CENTRAL BANK AND TRUST CORPORATION, receiver, *v.* STATE OF GEORGIA.

1. Estoppel by judgment applies alike to the State as to individuals.

(*a*) A former judgment of the superior court in a case arising upon the same issues and matters as are included in a subsequent suit, between the State and the receiver of an insolvent bank, decreeing the exact sum that the State should recover of the receiver, without specifying whether the sum adjudicated to be due included interest (this sum

having been accepted by the State and no exception having been taken to the judgment on the ground that it did not include interest), is res adjudicata as to a subsequent suit brought by the State to recover interest of the receiver on the same sum so decreed to be due the State by the former judgment.

(b) A single cause of action can not be split up and tried by piecemeal, so as to recover the principal sum in one suit, and interest in another.

2. Where a bank has made a contract with the State, whereby it agrees to pay her a certain rate of interest on daily balances on deposit in the bank, belonging to the State, and the bank subsequently becomes insolvent and a receiver is appointed to take charge of its assets, the State can recover of the receiver the principal sum due her and interest at the contract rate to the date of the appointment of a receiver for the assets of the bank, and also seven per cent. per annum as legal interest from the date of the receivership to the date of payment.

(a) The State has the right of priority of payment out of the assets of an insolvent State bank which prior to insolvency was a State depository, as against individual depositors and creditors.

NOVEMBER 20, 1912.

Intervention. Before Judge Ellis. Fulton superior court. January 18, 1912.

*Candler, Thomson & Hirsch,* for plaintiff in error.

*Thomas S. Felder, attorney-general,* contra.

HILL, J. In the year 1907, on the application of the attorney-general of Georgia, the assets of the Neal Bank were placed in the custody of a receiver, pursuant to section 2306 of the Civil Code Prior to and at the date of the receivership, the bank was a designated depository of the State, and at the time of its failure the bank was indebted to the State in a large sum of money deposited by various State officials, which deposits appeared upon the books of the bank. By appropriate interventions the State set up the fact that at the time of the bank failure she had on deposit in the bank certain sums of money deposited by and standing in the name of the State treasurer and other State officials, and claimed a first and prior lien over all other depositors on the assets of the bank, and prayed that her lien be established and the receiver be directed to pay her the several amounts of money so deposited. The trial court decreed that the money deposited in the name of the State officials was the money of the State, and that the State had a prior lien on the assets of the bank; and the receiver was directed to pay to the State the sums so standing in the name of the officials, according to the terms of the decree. This court, on review, affirmed that decree. *Booth* v. *State of Georgia,* 131 *Ga.* 750 (63 S. E. 502); *Booth* v. *State of Georgia,* 134 *Ga.* 163 (67 S. E. 803).

The receiver of the bank subsequently paid to the treasurer of the State the principal sums of the several deposits, except a balance of $859.46 principal, due the State on account of a deposit made in the name of the Gordon Monument Commission. No interest was paid by the receiver on any of these sums under the decree, nor does it appear that the decree in terms called for the payment of interest. After the payment of the principal sum by the receiver, the State filed another intervention, in which it was alleged that the receiver of the bank had paid only the principal sums of the several amounts which were due the State, and prayed that the receiver be directed to pay the State two per cent. on the daily balances of the respective deposits (under and by virtue of the contract of the bank with the State) to the date of the failure of the bank, and also seven per cent. on the amounts due upon the several deposits from the date of the failure of the bank to the date when the principal sums were paid. It was alleged in the intervention, that the receiver had sufficient funds in his custody to pay the State's claim for interest; and that the State claimed the amount due on the deposit appearing in the name of the Gordon Monument Commission, viz., the principal sum, interest at the contract rate of two per cent. on daily balances to the date of the receivership, and interest at the rate of seven per cent. to date of payment. The receiver filed its answer to the intervention, admitting the statement of facts contained therein; but also filed its demurrer to the intervention. There was no issue of fact. The court overruled the demurrer, and decreed that the State was entitled to receive two per cent. per annum on the daily balances of all deposits of money in said bank, belonging to the State, to the date of its failure; and that the State was entitled, in addition, to seven per cent. per annum as interest on all balances on all the deposits from the date of the failure of the bank to the date of the payment of the principal sums on deposit. The court also found that no interest had been paid by the receiver to the State, and that the receiver had sufficient money in custody to pay all the claims of the State for interest, and the receiver was directed to pay the claims of the State for interest accordingly. To this decree the receiver excepted.

1. It is insisted by the plaintiff in error that the original decree of the court, adjudging that the principal sums claimed by the

State should be paid, and the acceptance by the State of the principal sums under said decree estopped it from setting up a claim for interest alleged to be due, and that the question is now res adjudicata. This leads us to consider, first, was there a final judgment or decree of the court, as insisted. We hold that there was a decree, and that it was a final judgment. *Booth* v. *State*, 131 *Ga.* 750 (63 S. E. 502), 134 *Ga.* 163 (67 S. E. 803). There was no prayer to reopen the judgment. Second, does the doctrine of estoppel apply to the State as well as to individuals? In 1 Herman on the Law of Estoppel, § 197, it is said: "A State is bound by her judicial pleadings and admissions, the same as private persons, and is entitled to no greater right or immunity as a litigant than they are. The doctrine of estoppel applies to the State just as it does to individuals. Nor is this rule of law varied by the fact that there are others interested in the subject-matter of the proceedings conducted by the State. . . So, where the State, by its proper officers, enters into an agreed case, if it is not bound by the agreement, it is in any event concluded by a judgment and decision to which it has not excepted." We hold that the doctrine of estoppel applies alike to the State as to individuals in cases of this kind. The decree rendered in this case, fixing the exact sum that the State should recover, becomes res adjudicata. In the *Booth* case, supra, it is said (p. 757): "It was a judgment as to the subject-matter of the same, finally adjudicating and settling the rights of the parties litigant under the pleadings." And on page 754 it is said that the evidence showed that the contract between the State and the Neal Bank was to the effect that the State was to receive two per cent. interest on the daily balances. If all the issues and matters included in the present suit were involved in the former suit, in which a final judgment was rendered, the State is concluded by that judgment. Civil Code, §§ 4335, 4336, 5820, 5943. The former judgment was not an interlocutory order or decree, but a final judgment; and if the State did not avail herself of the right to recover principal and interest, she is now estopped from setting up a claim for interest.

A single cause of action can not be split up and tried by piecemeal. *Atlanta Elevator Company* v. *Fulton Mills*, 106 *Ga.* 430 (32 S. E. 541). In the opinion in that case Lumpkin, P. J., said: "Nothing is better settled than that the measure of damages for

refusing to pay money due to another is the interest lawfully accrued. Another well-settled principle is, that 'if a contract be entire, but one suit can be maintained for a breach thereof.' Civil Code, § 3793 [Civil Code of 1910, § 4389]. And see, in this connection, *Desvergers* v. *Willis,* 58 *Ga.* 388; *Evans* v. *Collier,* 79 *Ga.* 319 [4 S. E. 266]; *Thompson* v. *McDonald,* 84 *Ga.* 5 [10 S. E. 448], holding that 'an action resulting from a single contract can not be split into two causes of action, the whole being mature when the first action was brought;' *Allen et al.* v. *Stephens,* 102 *Ga.* 596 [29 S. E. 443]; *Broxton* v. *Nelson,* 103 *Ga.* 327 [30 S. E. 38, 68 Am. St. R. 97]. The mere fact that a creditor is poor, and on account of his distressed circumstances needs money due him, gives him no more right to sue a debtor for an amount admitted to be due upon a single account, reserving the right to sue for a balance in dispute, than would have a millionaire to arbitrarily cut up and bring separate suits upon a single cause of action against a debtor of the latter."

2.   In the preceding division of this opinion we held, under the facts there recited, that the State is estopped by the former judgment of the court from suing for and recovering interest in a subsequent suit for interest which might have or had been recovered in that decree. But how stands the case as to the "Gordon Monument Commission" fund? The doctrine of res adjudicata is not invoked as to this fund, which was not declared for in the former suit. As to that fund, we think the court below correctly held that the State was entitled to recover the balance of the principal sum due, with interest on the daily balances at the contract rate of two per cent. until the date of the receivership, and interest from that date at the legal rate of seven per cent. per annum. Up to the time of the insolvency of the bank the contract rate between the State and the bank was two per cent., and prevailed. But the bank by becoming insolvent breached the contract, for the reason that it was no longer a going concern with daily balances as contemplated in the contract; and after its insolvency the State was entitled to recover her deposit; and from that date the receiver was due the State the principal sum and interest at the legal rate. "The term 'debt,' as used in the statute, embraces interest as well as principal." *Conley* v. *Maher,* 93 *Ga.* 781 (20 S. E. 647); *Park* v. *Candler,* 114 *Ga.* 466 (40 S. E. 523). In Re John Osborn's Sons & Co., 29

L. R. A. (N. S.) 887, 889 (100 C. C. A. 392, 177 Fed. 184), it is said "that interest, in the absence of an express agreement to pay it, is a mere incident of the debt, and is to be recovered as damages for its detention. Stewart v. Barnes, 153 U. S. 456, 38 L. ed. 781, 14 Sup. Ct. Rep. 849." See also Baker v. Williams Banking Co., 42 Oregon, 213 (70 Pac. 711). As to the order of paying debts of insolvent banks our Civil Code, § 3363, declares: "If the bank is insolvent, the order of paying off the debts shall be the same as is prescribed in cases of administration, to the extent applicable, except where special preference or postponement is given by law." And section 4000 provides that debts of a decedent shall rank in the following order: (1) year's support; (2) funeral expenses; (3) expenses of administration; (4) unpaid taxes or other debts due the State or United States, etc. In case of *Seay* v. *Bank of Rome,* 66 *Ga.* 616, it is said: "'The sovereign right of the State to priority of payment out of the effects of an insolvent is based upon the common law, and was adopted by the act of 1784, which introduces into the jurisprudence of Georgia the whole body of the common law not inconsistent with our new frame of government, and subject, of course, to legislative modification. It is a wholesome right, and as such should receive the sanction and approbation of the courts.' 18 *Ga.* 66. 'This right of priority is not inconsistent with the principles or spirit of our institutions, but is necessary for the protection of the public revenue, so as to enable the government to accomplish the end of its institution.' Ibid." See also *Booth* v. *State,* 131 *Ga.* 750 (2), 758 (63 S. E. 502). It appears, therefore, that the State has a priority of lien for the principal and interest due her by the receiver, over individual creditors and depositors.

As the plaintiff in error has obtained a material modification of the judgment of the court below, we hold that it is entitled to the costs of bringing the case to this court.

*Judgment reversed in part, and affirmed in part. Fish, C. J., and Atkinson, J., dissent in part. Lumpkin, J., disqualified. The other Justices concur.*

FISH, C. J. I can not agree to so much of the majority opinion as holds that the State is entitled to recover from the receiver of the Neal Bank seven per cent. per annum as legal interest from the date of the receivership to the date of payment of the State's

claim. The intervention of the State declares: "That the said Neal Bank, being a depository of the State of Georgia, was under contract and liable to pay the State semi-annually interest at the rate of two per cent. per annum, payable on the first days of January and July of each year, on daily balances of all public money or funds belonging to the State of Georgia and deposited with said bank." On December 23, 1907, the Neal Bank, upon the application of the attorney-general of the State, was placed in the hands of a receiver to wind up its affairs and business as an insolvent bank. The bank, having been named and appointed a State depository, entered upon its duties as such on March 1, 1904. Under the Civil Code, § 1251, "The Governor shall make with depositories the most advantageous contracts for interest to be paid by them to the State for the use of the State's money which may be deposited therein," etc. "Banks incorporated by the laws of or doing business in this State may make the same contracts respecting the rate of interest to be paid for the loan of money as are lawful between individuals, . . and all laws now in force, respecting the rate of interest charged for the loan of money by individuals, shall be applicable to banks doing business in this State." In § 3426 the Civil Code declares: "The legal rate of interest shall remain seven per centum per annum, where the rate per cent. is not named in the contract, and any higher rate must be specified in writing, but in no event to exceed eight per cent. per annum." The clear implication in this section is that where a rate is named in the contract, then that rate shall prevail, if it be no higher than eight per cent. per annum, and that it is only "where the rate per cent. is not named in the contract" that the legal rate of seven per cent. runs. In this State, if the rate agreed upon in the contract be not over eight per cent. per annum, the contract rate shall run after maturity of the debt as well as before. *Silvey* v. *McCool,* 86 *Ga.* 1 (4), 5 (12 S. E. 175). So, where a contract specifies a rate of interest which is not beyond the per cent. which the parties may legally contract for, if a judgment is rendered on such contract, it bears interest at the contract rate, and not at the rate which all contracts carry if no rate be stipulated therein. *Cauthen* v. *Central Georgia Bank,* 69 *Ga.* 733; *Daniel* v. *Gibson,* 72 *Ga.* 367; *Neal* v. *Brockhan,* 87 *Ga.* 130, 134 (13 S. E. 283). It has also been held (*Crockett* v. *Mitchell,* 88 *Ga.* 166 (3), 14 S. E.

118), that a note bearing a legal rate of conventional interest continues to bear that rate against the assets of the deceased maker's estate. In that case, however, it appears that the estate was solvent. These decisions may not be in accord with those rendered in some other jurisdictions, but they establish the rule in this State; and are manifestly based upon the underlying principle that the contract rate of interest runs in all cases, while the indebtedness bears interest, where it does not exceed eight per cent. per annum. The assets of the bank were placed in the hands of a receiver because of its insolvency, and there is nothing in the record to indicate that its assets will be sufficient to pay even the principal of all of its indebtedness. Nor does it appear that the receiver has made any interest on any of the funds in his hands. While the State, under the statute, is a preferred creditor of an insolvent bank which is a State depository, there is no statute fixing the amount of interest which the State's claims against such bank shall bear after insolvency, when there is a contractual rate of interest between the State and the bank. In these circumstances, I am confident that the State can lawfully recover, at most, no more than the contractual rate of interest from the date of the receivership to the time of the payment of its claim. The fact that upon the insolvency of the bank it was no longer a going concern, with daily balances as contemplated in its contract with the State, did not, in my opinion, operate to change its contract with the State as to the rate of interest the State's deposits should bear, and entitle the State to recover, by reason of the breach of such contract by the bank, interest at the rate fixed by the statute in cases where no contract rate is agreed on. Of course I do not contend that interest is not a part of the debt upon which it has accrued. The question here, however, is what interest has accrued; that is, whether since the date of the receivership interest has accrued at the rate stipulated in the contract between the State and the bank, or at the rate provided by statute in the absence of a contract on the subject. It is true, as is stated in the majority opinion, that the code fixes the order of paying off the debts of an insolvent bank the same, to the extent applicable, as is prescribed in cases of administration, except where special preference is given by law; and in cases of administration, "unpaid taxes or other debts due the State or the United States" come in for payment next after

year's support, funeral expenses, and expenses of administration. The fixing of the order of payment, however, merely designates the rank of the claims against an insolvent bank; and I do not think it follows that the insolvency of a bank ipso facto operates, not only to impair, but to entirely destroy its contract with the State as to the rate of interest to be paid on the State's deposits, where the bank is a State depository, and to substitute therefor an entirely different rate.

It even required a statute to make executions for taxes bear interest, and certainly the collection of its taxes has ever been as important and as necessary to the State as the collection of its claims against insolvent banks which are State depositories. As I have already said, there is no statute providing for any special rate of interest on such claims of the State, in the absence of a contract rate of interest; therefore in such cases the State is entitled to the same rate of interest as individual creditors of the bank; but where there is a contract rate, then the State is bound by that just as other creditors are bound. I am authorized by Justice Atkinson to state that he concurs in my dissenting opinion.