## 23949. AMERICAN SURETY COMPANY OF NEW YORK
### *v.* GRIFFIN BANKING COMPANY.

DECIDED FEBRUARY 1, 1935.

*Martin, Martin & Snow,* for plaintiff.
*Beck, Goodrich & Beck,* for defendant.

MacINTYRE, J.  The exception here is to the judgment affirming the ruling of the superintendent of banks rejecting the claim of the American Surety Company of New York as a preferred claim against the assets of the Griffin Banking Company, and classifying and allowing it "as a deposit having equal rank with other deposits in the bank."

The case was submitted to the judge of the superior court, without the intervention of a jury, upon substantially the following statement of facts:  On April 2, 1932, the American Surety Company of New York, which was authorized to do business in Georgia, "executed a bond in the penal sum of $10,000, which bond named the Griffin Banking Company as principal, the Surety Company as surety, and the Georgia Experiment Station as obligee:" a copy of said bond being attached to the statement of facts.  "The Griffin Banking Company closed its doors, by virtue of the proclamation of the Governor declaring a banking holiday, on March 3, 1933, and never reopened; and the bank was taken in possession by R. E. Gormley, superintendent of banks, on March 23, 1933, for liquidation.  On March 3, 1933, the Georgia Experiment Station, Board of Regents University System, H. P. Stuckey, local treasurer, had on deposit in said bank the sum of $18,427.72.  Depositor held surety bond of the American Surety Company of New York in the sum of $10,000 and liberty bonds of the par value of $9000 to secure said deposit.  Subsequent to taking possession of said bank by R. E. Gormley, superintendent, the depositor sold the liberty bonds for $9271.54, which amount was credited to depositor, leaving a balance due said depositor of $9155.78, of which amount the bank claims

$8905.78 is an unsecured deposit, and the balance, to wit, $250, is a preferred deposit, by reason of an unremitted check drawn on said deposit and charged against the same. No deposits were received by said bank after March 3, 1933, and all deposits in the bank to the account of the Georgia Experiment Station, Board of Regents University System, H. P. Stuckey, local treasurer, were made subsequent to August 27, 1927, and prior to March 3, 1933. The unsecured deposits in said bank on March 16, 1933, amounted to $968,-864.73, and the assets are not sufficient to pay the unsecured deposits. The superintendent of banks has included in the figure just given the deposit of the Georgia Experiment Station, amounting to $8905.78, which he has classified as an unsecured deposit, and $250 preferred deposit, and the American Surety Company contends the total of $9155.75 is a preferred claim.

"The Griffin Banking Company was not a State Depository on the date of the deposit of the Georgia Experiment Station or subsequent thereto." The Georgia Experiment Station is owned, operated and controlled by the State of Georgia by and through the Board of Regents of the State of Georgia. "On April 4, 1933, the Georgia Experiment Station filed its proof of claim in which it set out that it was entitled to a preference for the amount of deposit. A copy of said proof of claim is hereto annexed. . . . Immediately thereafter the American Surety Company of New York, by reason of the obligations contained in said bond, paid to the Georgia Experiment Station the sum of $9155.78, and thereupon the Georgia Experiment Station assigned to the American Surety Company of New York its certificate of proof of claim. Said certificate together with the assignment are hereto annexed as Exhibit C. Thereafter the American Surety Company of New York then amended the proof of claim originally filed by the Georgia Experiment Station: a copy of said amendment being hereto annexed . . as Exhibit D. On September 19, 1933, R. E. Gormley, as superintendent of banks for the State of Georgia, disallowed the claim of the American Surety Company of New York, as transferee, as a preferred claim, but on the contrary classified it and allowed it as a deposit, having equal rank with other deposits of the bank: A copy of said letter and affidavit of the superintendent of banks is hereto annexed . . as Exhibit E. Suit was instituted by the American Surety Company of New York in Spalding superior court within sixty days

after the date of the disallowance of said claim as a priority by said superintendent of banks." The foregoing facts are agreed upon "as all of the facts material to a clear understanding of the issues raised by the pleadings in said cause."

The bond referred to in the foregoing statement stipulates that "if the above bound principal shall in due course pay on legal demand, made during the term of this bond, all monies deposited hereunder with it for the account of obligee, together with interest at the rate agreed upon, then this obligation shall be null and void; otherwise to remain in full force and effect;" and it provides that "in case of payment of loss on account of default hereunder, the surety shall be subrogated to such proportion of all the rights of the obligee growing out of such loss, including dividends paid and to be paid out of the estate of the principal, as the amount so paid by the surety bears to the total deposit hereunder at the time of such default, and simultaneously with such payment the obligee shall execute all papers required by the surety and render all assistance, not pecuniary, to secure to the surety the rights herein provided." The claim referred to in the statement of facts, made by "H. P. Stuckey, local treasurer," states that "the Griffin Banking Company . . is justly indebted to the Georgia Experiment Station . . in the sum of $9155.78." This claim was properly assigned to the American Surety Company of New York by "H. P. Stuckey, Director of Georgia Experiment Station." The American Surety Company of New York amended the proof of claim originally filed by the Georgia Experiment Station, as follows: "All of said funds at the time of the failure of said bank were the funds belonging to the State of Georgia, and this claimant shows that the State of Georgia has a prior lien on all the assets of said defunct bank for the payment of this claim. This claimant further shows that it was surety on a depository bond given for the protection, of this particular deposit, and, since the failure of said bank, claimant has paid the State of Georgia the amount represented in said claim, and is therefore subrogated to all rights of the State in and to said fund."

"The sovereign right of the State to priority of payment out of the effects of an insolvent is based upon the common law, and was adopted by the act of 1784, which introduces into the jurisprudence of Georgia the whole body of the common law, not inconsist-

ent with our new frame of government, and subject, of course, to legislative modification. It is a wholesome right; and as such, should receive the sanction and approbation of the courts." *Robinson* v. *Bank of Darien,* 18 *Ga.* 65 (7). A few of the decisions approving the foregoing rule are: *Seay* v. *Bank of Rome,* 66 *Ga.* 609 (4), 616; *Booth* v. *State,* 131 *Ga.* 750 (63 S. E. 502); *Central Bank & Trust Corporation* v. *State,* 139 *Ga.* 54, 59 (76 S. E. 587). The origin and development of the State's right of sovereignty is gone into at length by the Supreme Court of Appeals of Virginia in the case of United States Fidelity & Guaranty Co. *v.* Carter, 161 Va. 381 (170 S. E. 764).

The plaintiff in error contends that it has a preferred claim, for the reason that it occupies the status of the State of Georgia, and the State has a prior claim by reason of its right of sovereignty. Certainly the American Surety Company of New York, as transferee of the Georgia Experiment Station, stands in the shoes of the Georgia Experiment Station; but does it so occupy the status of the State as that it may exercise the State's right to priority by virtue of its sovereignty? Long prior to the banking act of 1919, the Supreme Court, in *Knight* v. *State,* 137 *Ga.* 537 (73 S. E. 825), held: "The principle ruled in *County of Glynn* v. *Brunswick Terminal Co.,* 101 *Ga.* 244 (28 S. E. 604), is controlling in this case. Accordingly, where funds arising partly from oil-inspection fees, and partly from private donations, had been turned over to and were in the hands of trustees of a school of agriculture and mechanic arts, established in a particular congressional district, under the Civil Code, §§ 1552 et seq., and were deposited by the treasurer of the board of trustees in his own name, as such, in a bank which was a State depository, and which failed, this did not constitute such a debt due to the State as created a lien in its favor by virtue of its general sovereignty, or under the law in reference to State depositories, embodied in the Civil Code, §§ 1249 et seq." It will be observed that the act establishing schools of agriculture and mechanic arts (Ga. L. 1906, p. 72; Civil Code (1910), § 1552, et seq.), and the act establishing the Georgia Experiment Station (Ga. L. 1888, p. 49), are similar. Under section 1 of the act of 1906, schools of agriculture and mechanic arts "shall be branches of the College of Agriculture, a department of the University of Georgia." Section 7 of the act of 1888 provides that the "Georgia

Experiment Station shall be regarded as connected with the State College of Agriculture and Mechanic Arts, established under an act approved February 27, 1875. Without going into further details, we will state that a comparison of the two acts under consideration discloses that the methods of establishing, maintaining, and conducting schools of agriculture and mechanic arts and the Georgia Experiment Station are quite similar.

Counsel for the plaintiff in error contend that section 45 of article 6 of the act of 1931 (Ga. L. 1931, p. 1), which constitutes a department of the State Government of Georgia, to be known as the "Board of Regents of the University System of Georgia," and names the corporation heretofore established and existing under the name and style, "Trustees of the University of Georgia," as "Regents of the University System of Georgia," with other portions of said article, "nullifies the decision in the *Knight* case." Section 46 of the said act of 1931 reads: "The University System of Georgia shall consist of the University and all of its branches." Section 47, specifying the branches of the University of Georgia, includes "Georgia Experiment Station, Griffin." Section 48 reads: "The government of the University of Georgia, and all of its branches named in section 47 of article 6 of this act, is vested in a Board of Regents." Section 69 reads: "The government, control, and management of each of said institutions named in section 47 of article 6 of this act is hereby vested in the Board of Regents of the University System of Georgia." Section 70 reads: "All of the powers, duties, privileges, and rights heretofore by law vested in the board of trustees or directors of the various institutions named in section 47 of article 6 of this act are hereby vested in the Board of Regents, and all laws now existing pertaining to the powers or duties of said separate boards of trustees or directors shall be applicable to the Board of Regents as successors to each of said separate board of trustees, except where repealed herein expressly or by implication." Section 74 reads: "The said Board of Regents shall carry out the purposes and intent of the various acts creating the institutions named in section 47 of article 6 of this act, it not being the intent of this act to repeal any of the laws creating said institutions or defining their functions, but merely to abolish the separate boards of trustees or directors of said institutions and place the management and control of said institutions in one board with all of the powers

formerly vested in the several board of trustees or directors, except such powers and duties expressly or by implication repealed." Section 71 reads: "That title to all real, personal, and mixed property of whatever nature now held by the boards of trustees or directors of each of the institutions named in section 47 of article 6 of this act shall vest in the Board of Regents of the University System of Georgia, to be held by said board in trust for the benefit and use of the institutions entitled thereto, it being the purpose and intent of the legislature that the Board of Regents shall hold title to the property or assets of each institution, so that each institution shall receive the use and benefit of the property devoted to its use, and in no event shall the property or assets of one institution be subject to the liabilities or obligations of any other institution. . . " The recent case of *State* v. *Regents,* 179 *Ga.* 210 (175 S. E. 567), contains an interesting discussion of the Board of Regents. It is there held that the "Regents of the University System of Georgia is a distinct corporate entity, though controlled by a Board of Regents which is designated as a department of the State government." We quote further from that decision as follows: "The university corporation is not the State, or a part of the State, or an agency of the State. It is a mere creature of the State, and a debt of the creature does not stand upon a level with the creator and never can rise thereto. . . The 'Regents of the University System of Georgia' is a corporation. The State may be likened to a stockholder. The regents are the directors. The stockholder is a separate entity from the corporation itself. The stockholder places capital or a corpus into the hands of the corporation, and usually that alone is liable for the corporation's debts." In the *Regents* case, the Supreme Court said: "In *Knight* v. *State,* 137 *Ga.* 537 (73 S. E. 825), it was held that where the treasurer of one of the branch institutions deposited the funds of that institution in a bank which was a State depository and which failed, these facts did not constitute a lien in favor of the State as a sovereignty, as would have been true of funds deposited by the State in its own name. The ruling in that case was to the effect that the debt created by such deposit was a debt in favor of such educational institution as a separate legal entity. By a parity of reasoning a liability incurred by such institution would have constituted a liability against the institution itself, and not against

the State." We do not think that the act of 1931, supra, or any part of it, had the effect of "nullifying the decision in the *Knight* case," and we think that the principle enunciated in the *Knight* case is applicable to the case at bar. Again, under the reasoning in the *Regents'* case, supra, we are satisfied that the Georgia Experiment Station is not endowed with the sovereign right of the State to priority of payment out of the effects of the defunct bank; and, by the same token, we hold that the American Surety Company of New York, as transferee of the Georgia Experiment Station, has no claim to priority of payment out of the effects of Griffin Banking Company.

Having reached the above conclusion, it becomes unnecessary, for the purposes of this decision, to determine whether or not the priorities of payment fixed by act of 1927 (Ga. L. 1927, pp. 195, 199), which amends the banking act of 1919 (Ga. L. 1919, pp. 134, 159), abrogate the sovereign right of the State itself to priority of payment out of the effects of a defunct bank. In conclusion, we hold that the judge of the superior court did not err in affirming the ruling of the superintendent of banks rejecting the claim of the American Surety Company of New York as a preferred claim against the assets of the Griffin Banking Company and classifying it as a deposit having equal rank with other deposits in the bank.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*