HON. WILLIAM H. DE WITT, ⎫
HON. WILLIAM H. HUNT, ⎭ Associate Justices.

GARDNER, RECEIVER, RESPONDENT, *v.* CALDWELL, SHERIFF, ET AL., APPELLANTS.

[Submitted, May 9, 1895. Decided, June 3, 1895.]

RECEIVER—*Functions of—In charge of property in litigation.*—A receiver in charge of property in litigation is to be regarded as the officer of the court which appointed him. He stands as an indifferent person, clothed with the power of receiving and preserving the property and assets involved in the suit wherein he was appointed, for the benefit of whoever may finally be declared to be entitled to them. (*Stebbins* v. *Savage,* 5 Mont. 253, cited.)

SAME—*Levy under execution on property in hands of—Injunction.*—Where, in an equita-ble action, a receiver has been appointed, *pendente lite,* by a court of competent juris-diction, to take charge of the property and affairs, including rights of way, franchises and assets of a corporation, and has taken charge and is in possession· of all such property, a judgment creditor of the corporation, who instituted his action and ob tained his judgment in a court of co-ordinate jurisdiction in another district of the

(221)

state, subsequent to the appointment of such receiver, and subsequent to the taking of possession by such receiver, may be restrained by injunction from levying an execution upon the property of the corporation in the hands of the receiver, or upon any interest that such corporation may have in such property in the receiver's hands.

*Appeal from Ninth Judicial District, Gallatin County.*

ACTION to enjoin the enforcement of a judgment. The cause was tried before ARMSTRONG, J. The plaintiff had judgment below. Affirmed.

Statement of the case by the justice delivering the opinion.

The plaintiff brings this action to enjoin the sheriff of Gallatin county from levying upon and selling the property of the Gallatin Canal Company, said property being in the hands of respondent as receiver, and to enjoin defendant Marlow from trying to enforce the collection of a judgment against the property of said Gallatin Canal Company.

In March, 1892, one W. H. Tracy *et al.* commenced an action, which is still pending, in the district court of the Ninth judicial district, against the Gallatin Canal Company. In May, 1892, plaintiff, Gardner, was duly appointed by said court as receiver of all the properties and assets of said Gallatin Canal Company. He qualified as receiver, and at once took into his possession and under his control all of the properties, franchises, rights of way, and assets of said corporation, and is now in possession of all of said properties, and has issued receiver's certificates for the repairs of said canal property. In April, 1893, and while the receiver was in charge, defendant Marlow sued the Gallatin Canal Company, by action commenced in the district court of the First judicial district, and obtained judgment against the said Gallatin Canal Company for about $28,000. In July, 1893, execution was issued in said judgment, commanding the sheriff of Gallatin county to levy upon and sell the properties of said Gallatin Canal Company, or so much thereof as might be necessary to satisfy said debt, which properties are those in the possession of plaintiff as receiver.

The complaint further pleads that the sheriff is about to levy

upon and sell said properties, and that the sheriff and said Marlow had actual knowledge that this plaintiff was the receiver of the Gallatin Canal Company, and in possession of the properties of said company. The defendants demurred generally to the complaint. Their demurrer was overruled. Judgment awarding an injunction was made and entered, as prayed for in plaintiff's complaint. Defendants appeal.

*Massena Bullard,* for Appellants.

*Hartman & Hartman,* for Respondents.

HUNT, J.—The issue tendered by the pleadings may be briefly stated as follows: Where, in an equitable action, a receiver has been appointed, *pendente lite,* by a court of competent jurisdiction, to take charge of the property and affairs, including rights of way, franchises, and assets of a corporation, and has taken charge and is in possession of all such property, can a judgment creditor of the corporation, who instituted his action and obtained his judgment in a court of coordinate jurisdiction in another district in the state, subsequent to the appointment of such receiver, and subsequent to the taking of possession by such receiver, levy an execution upon the property of the corporation in the hands of the receiver, or upon any interest that such corporation may have in such property in the receiver's hands?

Under established and familiar principles governing the functions of receivers in charge of property in litigation, the receiver is to be regarded as the officer of the district court of Gallatin county, which, in the exercise of its chancery powers, appointed him. He stands as an indifferent person, clothed with the power of receiving and preserving the property and assets involved in the suit wherein he was appointed, for the benefit of whoever may finally be declared to be entitled to them. The principle upon which the court proceeded is based upon that of securing the subject-matter of the litigation to whoever may ultimately own it and be lawfully entitled to the possession of it. To effectually carry out this object, the court

itself has, by its order appointing a receiver, declared that it was inequitable that either party should have possession or control of the Gallatin Canal, or any other property of the Gallatin Canal Company, and the rents, issues, and profits thereof, pending the litigation of the case referred to in the complaint.

Without changing the title, but in the exercise of what is regarded as a branch of the extraordinary powers of a court of equity, the court may be said to have taken possession of the property, and deprived the corporation of its possession, and, through the receiver, assumed the entire control and custody thereof, and retains the same until, by formal adjudication, there is a determination of the rights of the parties interested. But the appellants claim a right to levy upon and sell the property of the corporation, even though it be in the receiver's hands, arguing that, while they may not have a right to dispossess the receiver, yet they may sell the canal, and thus establish a lien thereon, which need not interfere with any future act of the receiver, who would only proceed having due regard for the judgment creditors' rights. Just how appellant proposes to proceed to execute his plan without interfering with the receiver we cannot tell; nor can we satisfactorily reconcile his position with the reason of the established rules of equitable jurisdiction, which forbid generally any interference with the possession of the receiver, not only upon grounds of convenience, but of danger of defeating the object of placing the fund or property *custodia legis*, by having the property wrested from the receiver's possession at the instance of any particular creditor, or so incumbered as to impair its value in his hands as a fund for final distribution in any judgment to be rendered in the original suit.

The earliest case to which the court have access and the leading authority laying down the doctrine that where a receiver has been put in possession of an estate, or, to be more accurate, where the court has once taken possession by putting a receiver upon the estate, is *Angel* v. *Smith*, 9 Ves. 335, decided in 1804. Ejectment was brought without leave of court.

Lord Eldon said: "It is clearly a contempt of this court to disturb sequestrators; and the party cannot claim, though by an adverse title, in any other way than by coming to be examined *pro interesse suo.* Consider the consequence. How are sequestrators to defend their possession against an ejectment? The court of king's bench have decided that where a sequestration is awarded to collect money to pay a demand in equity, if t is not executed, that is, if the sequestrators do not take possession, and a judgment creditor takes out execution, notwithstanding the sequestration awarded there may be a levy under the execution; intimating that, if the sequestration is executed, the other, though prior, must come here." The writ of sequestration referred to by the lord chancellor was issued to seize the personal estate and profits of the real estate of a defendant, and to detain them subject to the order of the court. It was intended to enforce the performance of the decree of the court where a defendant absconded. (Bl. Comm. bk. 3, p. 444.) It was argued before Lord Eldon, as appears by the report above referred to, that there was no difference between the position of a receiver and that of sequestrators, who were the officers of the court. Lord Eldon held that he had no doubt that, where sequestrators were in possession under the process of the court for the purpose of raising a duty, their possession could not be disturbed, even by an adverse title, without leave, "upon this principle: that the possession of the sequestrators is the possession of the court." "As to receivers, I am very sure, though I cannot refer to the case, that the same rule has obtained wherever a receiver has been put upon the estate. I am also very confident that I have heard that motion for leave to bring an ejectment against the receiver more than once, since I have sat here. The register also apprehends such motions have been made. There may be inconvenience in that, but the inconvenience the other way is enormous. If it is necessary to ask leave, the court must have credit for never refusing it where it ought to be granted; and, if so, very great purposes of convenience may be answered by putting the party to ask it."

We find this general principle sustained in the case of *Atlas Bank* v. *Nahant Bank* (Mass. 1839; Shaw, C. J.) 23 Pick. 480, where it was held in the case of an attachment by an individual creditor of the assets of a bank, made after the filing of the bill asking for an injunction on the bank, on the appointment of the receivers, that the transfer of the property to the receivers necessarily removed the property from all future liability to attachment at the suit of an individual creditor; that the proceedings had relation to the time of the filing of the bill.

In *Hubbard* v. *Hamilton Bank*, 7 Metc. (Mass.) 340, in distinguishing between the case of an attachment before and one made after proceedings were instituted, praying for an injunction and the appointment of receivers, the court say: "In the latter case the attachment is ineffectual. The property is in other hands, and beyond the process of an attachment."

In *Noe* v. *Gibson* (1839) 7 Paige, 513, Chancellor Walworth said: "It is well settled that after a receiver has been appointed, and has taken the rightful possession of the property, it is a contempt of court for a third person to attempt to deprive him of that possession by force, or even by a suit or other proceeding against him without the permission of the court by whom the receiver was appointed;" and declared that this principle was applicable to every other interference with the possession of a receiver, sequestrator, committee, or custodian who holds the property as the officer of the court, as his possession is in law the possession of the court itself.

The supreme court of the United States, in *Wiswall* v. *Sampson* (1852) 14 How. 52, decided that, when a receiver had been appointed, his possession was that of the court, and any attempt to disturb it without the leave of the court first obtained will be a contempt on the part of the person making it. As peculiarly applicable to the contention of the appellants in the case at bar, we quote the following language from the opinion of Justice Nelson: "It has been argued that a sale of the premises on execution and purchase occasioned no interference with the possession of the receivers, and hence no con-

tempt of the authority of the court, and that the sale, therefore, in such a case, should be upheld. But, conceding the proceedings did not disturb the possession of the receiver, the argument does not meet the objection. The property is a fund in court, to abide the event of the litigation, and to be applied to the payment of the judgment creditor, who has filed his bill to remove impediments in the way of his execution. If he has succeeded in establishing his right to the application of any portion of the fund, it is the duty of the court to see that such application is made. And, in order to effect this, the court must administer it independeutly of any rights acquired by third persons pending the litigation. Otherwise, the whole fund may have passed out of his hands before the final decree, and the litigation become fruitless. It is true, in administering the fund the court will take care that the rights of prior liens or incumbrances shall not be destroyed, and will adopt the proper measures, by reference to the master or otherwise, to ascertain them, and bring them before it. Unless the court be permitted to retain the possession of the fund, thus to administer it, how can it ascertain the interest in the same to which the prosecuting judgment creditor is entitled, and apply it upon his demand ?''

In *Field* v. *Jones* (1852) 11 Ga. 413, in equity, the receiver was held not subject to garnishment, and not at liberty to bring or defend actions without especial leave of court; that he was but the agent of the court, and could not involve it in litigation; and that, if a receiver were subject to garnishment, such liability would defeat the ends for which receivers were appointed; and that his duty as receiver' would be defeated by judgments at law on garnishment, and the beneficial jurisdiction of chancery in this regard would be defeated.

A more recent decision in Georgia takes the same view of the law. (*Marshall* v. *Lockett*, 76 Ga. 289. See also, Waples on Attachment, pp. 220, 221.)

In Iowa, the supreme court held in the case of *Martin* v. *Davis* (1866) 21 Iowa 535, that property levied upon while in the hands of a receiver appointed by the court was '' in the

custody of the law, and not properly or legally liable to seizure by an officer under an execution."

*Robinson* v. *A. & G. W. Railway Co.*, 66 Pa. St. 160, generally recognized as an authority, was where the plaintiff levied upon property of the defendant company, which, however, was mortgaged. A receiver had been appointed before the levy of the execution, but after judgment was recovered. The property levied on was included in the mortgage. The court held that it passed into the custody of the receiver; and to permit it, while in legal custody, to be levied on and sold under the process of another court, would at once raise a conflict of jurisdiction, and interfere with the right of the receiver of the court to manage the property under his appointment. "If the property," say the court, "might be taken piecemeal from the custody of the receiver, the remedy of the creditors under the mortgage would become worthless, or at least greatly imperilled. Ample authority has been cited by the defendants in error. If a creditor believes that the property was not legally mortgaged, or for any good reason should not pass into the hands of the receiver, his duty is to apply to the court having appointed the receiver to ask its discharge out of custody in order that he may proceed against it. For these reasons, we think, the court below was right in setting aside the levy and execution."

We find the argument of confusion and inconvenience of weight with certain courts, notably North Carolina, where it was held in *Skinner* v. *Maxwell*, 68 N. C. 400, that, "when a court of equity has undertaken to adjudicate upon and distribute a fund among the parties entitled to it, it would be inconvenient if a court of law (or any other court) could by its process interrupt the adjudication and create new rights in the property itself. This rule is not understood as absolutely preventing the acquisition of new rights to the fund in controversy after the commencement of the proceedings. Any person claiming to have acquired such an interest *pendente lite*, while he cannot interfere under the process of another court, may apply to the court which has jurisdiction of the fund, *pro*

*interesse suo*, and his claim will be heard. (2 Story, Eq. Jur. §§ 831-833a.) The limits of this principle are somewhat uncertain, but it is sufficient for the present case to say that, while property is in the hands of a receiver, no right to it can be acquired by sale under execution. And it makes no difference that the receiver appointed declined to act; the property was, nevertheless, in the custody of the law.''

In a proceeding adjudging respondent guilty of contempt in not paying to the relator certain moneys which he held as receiver under the appointment of the court below, and which the court had ordered him to pay to the relator, but which he continued to hold as garnishee in proceedings taken in a justice's court, Chief Justice Campbell, in *People* v. *Brooks* (1879) 40 Mich. 333, held that the custody of a receiver is the custody of the court, and that it would lead to great confusion if a receiver were subject to take the funds in his official custody into any other tribunal, which could have no power to discharge him, to settle his accounts, or to punish him for collusion, and that the only practice which would save clashing among courts, and give to every court in equity such control over its own officers as is necessary, until they are finally discharged, was to not permit liens to be interfered with by garnishment or otherwise, without leave.

It was held in the case of *Dugger* v. *Collins*, 69 Ala. 324, that, when a sheriff has levied upon property in the hands of a receiver, equity will not interpose by an injunction in behalf of the sheriff enjoining a suit at law against him for interference, and that to permit property while in the custody of a receiver to be levied upon and sold under the process of another court would at once give rise to a conflict of jurisdiction, and would seriously interfere with and impair the receiver's right to the management of the property under his appointment.

It was urged in the Alabama case that the possession of the property in the hands of the receiver need not be disturbed, just as is urged in the case under consideration by the appellants. But the court declined to follow the argument advanced, and, as against the right to levy and sell lands in the hands of

a receiver, cited *Wiswall* v. *Sampson* and *Robinson* v. *Railway Co.*, *supra*. It is to be observed, too, that the court took this view of the law in a case much stronger than the one at bar, for the plaintiff there obtained his judgment before the receiver was appointed, and before the property was placed in his hands. Nevertheless, it was decided he did not acquire a lien by placing execution in the hands of the sheriff until long afterwards.

In *Edwards* v. *Norton* (1881) 55 Tex. 405, real estate in the hands of a receiver, to hold possession and collect the rents, was decided to be protected from levy of execution. In that case, too, it was urged that a levy on real estate left the possession undisturbed, and that the purchaser took the title of the defendant in execution subject to the possession of the receiver and the result of the suit. The court stated that argument was met by the case of *Wiswall* v. *Sampson*, *supra*, and added that they could " see no sufficient reason why the rule should be relaxed so as to facilitate execution sales of real estate in litigation."

We are not wholly without authority bearing upon the question, in our own supreme court. In *Stebbins* v. *Savage* (1884) 5 Mont. 253, an appeal from an order appointing a receiver, Wade, C. J., said : " The appointment of a receiver carries with it a right to the possession of the property described, and the further right not to be interfered with in such possession so long as the appointment remains in force. These are the ordinary powers and rights that belong to a receiver in order to make his appointment effectual, and they would have belonged to him, and he could have possessed and held the property, if they had not been mentioned in the order. * * * He is an officer of the law, and in his hands the property is in the custody of the law. He preserves and protects the property for the benefit of the rightful owner."

The question was discussed in *Jackson* v. *Lahee* (1885) 114 Ill. 287. The court said : " The law will not permit that possession to be disturbed without the consent of the court that first obtained jurisdiction to appoint the receiver. It

would seem an anomaly that a lien adverse to the rights of the receiver could be obtained, so as to control the distribution to be made. Obtaining a lien implies it may ultimately take the property or funds to which it attaches, and, if that could be done in this case, it would withdraw the same from the custody of the law, or from (what is the same thing) the custody of the receiver having the same in possession.''

In *Walling* v. *Miller*, 108 N. Y. 173, 2 Am. St. Rep. 400, the court of appeals held that a sale of property under levy of execution, where the property was in charge of a receiver, was void, unless authorized by the court which appointed the receiver. The doctrine is again recognized by the court of appeals of New York in *Re Christian Jensen Co.*, 128 N. Y. 550.

In a very recent case, *In the matter of the application of the Schuyler Steam Towboat Company for dissolution* (136 N. Y. 169), a receiver had been appointed by the supreme court of New York on July 31, 1891. The order appointing the receiver was filed August 1, 1891. August 3d the bond was approved, and August 4th filed. In the afternoon of August 1st the boats belonging to the corporation were libeled, and the United States marshal took possession. The receiver brought suit to restrain the libelants from further steps in the United States court. The court decided that the right of possession was in the receiver from the time of filing and entering the order appointing him; that the property of the corporation vested in him; that the property was in the custody of the law, and no other court could obtain jurisdiction over the property after such appointment, even under process upon which possession was taken prior to the qualifying of the receiver; that the court had the power to preserve and to protect it, it being in the custody of the law; and that, furthermore, ''as was said in *Heidritter* v. *Oilcloth Co.*, 112 U. S. 305, 'when the object of the action requires the control and dominion of the property involved in the litigation, that court which first acquires possession, *or that dominion which is equivalent*, draws to itself the exclusive right to dispose of it.' That dominion was ac-

quired by the order appointing the receiver in this proceeding." (Freeman on Executions, § 129.)

No sale of property in the hands of a receiver will be allowed on execution, under another judgment, without leave of court first obtained for that purpose. (High on Receivers, § 422; Beach on Receivers, § 224; Daniell, Ch. Pl. & Prac. § 743; 2 Story, Eq. Jur. 833a.) Persons claiming an interest in the realty may, doubtless, come into court and be heard in relation to their interests, but they cannot interfere with the possession of the receiver, unless by order of court. (High on Receivers, § 146.)

The appellants rely on several cases not in point. In *Albany City Bank* v. *Schermerhorn*, 9 Paige 372, the creditor who made levy upon the realty had secured judgment apparently before the petition was filed asking for a receiver. The case, too, arose on a question of contempt. Under the facts, which are very dissimilar to those in the case at bar, the court held that there was no contempt committed in levying. The principle sustained in the case goes no further than stated by High (§ 171), that "where a receiver is in the actual possession of the defendant's real estate, which is subject to a lien of a judgment against the defendant, the levy upon and sale of the defendant's interest in the real estate by a sheriff does not disturb the receiver's possession, and is not a contempt of court." The text of Mr. High's book must be taken as cautiously restricted in its application to cases where the judgment was obtained and lien attached before the receiver was appointed. The exact purport of the opinion is expressly recognized in the Alabama decision cited above. (See, also, *Wheeler* v. *Walton & Whann Co.*, 65 Fed. 720.)

*Wheaton* v. *Spooner*, 52 Minn. 417, 54 N. W. 372, also relied upon by appellants, turned upon the right to levy an execution upon a judgment which had been obtained prior to the appointment of a receiver. It was held that a judgment creditor of the party who was the judgment creditor of the syndicate, whose property was in the receiver's possession, could levy by execution upon the judgment, as the judgment be-

longed, not to the syndicate, but to the judgment creditor, and was subject to his control.

Being impressed with the reasoning of the cases reviewed, and with the justice of the rule as it has been expanded since first enunciated by the English courts, we think it a sound policy to hold that while the defendants' property is *in custodia legis,* as in the custody of a receiver, there can be ordinarily no interference with the receiver's possession by actual seizure or by sale of the debtor's interest in the corporation's property subject to the possession of the receiver, where the execution has been issued since the receiver was appointed. And we are further satisfied that no such levy can properly be made under an execution issued from the district court of Lewis and Clarke county against property in the hands of the receiver who was appointed by and was subject to the orders of the district court of Gallatin county.

The appellants had a right, it would seem, to establish by judgment their debt against the corporation by suit in Lewis and Clarke county, but they had no right to proceed to levy an execution upon the property of the corporation in the custody of the receiver in another judicial district.

In an exhaustive and learned opinion of the supreme court of Alabama, rendered in 1891 (*Gay* v. *Brierfield Coal & Iron Co.,* 94 Ala. 303, 33 Am. St. Rep. 122), after carefully reviewing many federal decisions, the principle that no court can interfere with the custody of property held by another court through a receiver, but that all claims on the property in the custody of the receiver must be under the control of the court having such custody, is discussed; and the conclusion reached that, to preserve harmony between courts of concurrent jurisdiction, it is very important that the writs or processes of one court shall not interfere with or disturb the possession of any subject-matter then *in gremio legis.* See, also, *Dillingham* v. *Anthony,* 73 Tex. Sup. 47, 3 L. R. A. 631.

We do not attach importance to the lack of actual knowledge on the part of the judgment creditor (Marlow) in the suit at law of the fact that a receiver had been appointed by the court

in the Tenth judicial district. That point might have some bearing in a contempt proceeding, where different considerations control, but not in this action for injunction against an unwarranted levy. The denial of the right to levy the execution is upon the broader grounds hereinbefore discussed. As was said by the vice chancellor in *Evelyn* v. *Lewis*, 3 Hare 472 : "Whether the party proceeding at law did or did not know that a receiver had been appointed over the property, or however clear the right of the claimant might be, the court would restrain the prosecution of the claim if it were instituted without leave of this court."

Restricting our decision, therefore, to a negative answer to the principal question stated, we think that the district court which appointed the receiver properly restrained the sheriff from proceeding, and the judgment creditor from trying to enforce collection by interfering in any way with the receiver or the property in his custody. The judgment is affirmed.

*Affirmed.*

PEMBERTON, C. J., and DE WITT, J., concur.

