### AMERICAN BONDING CO. OF BALTIMORE, MD., v. REYNOLDS.

#### (District Court, D. Montana. February 11, 1913.)

#### No. 236.

1. STATES (§ 110*)—PREROGATIVES OF SOVEREIGNTY—PRIORITY OF PUBLIC DEBTS.

   Montana in adopting, by Rev. Codes, Mont. §§ 3552, 8060, the common law of England, where not excluded by or inconsistent with constitutional or statutory enactments, adopted the crown's prerogative with respect to public debts, and the state as sovereign is entitled to priority of payment over private creditors of the same debtor.

   [Ed. Note.—For other cases, see States, Cent. Dig. § 108; Dec. Dig. § 110.*]

2. STATES (§ 110*)—PRIORITY OF CLAIMS—RECEIVERSHIP.

   The prerogative right of a state as a creditor to priority of payment from the assets of a banking corporation is not affected by the fact that a receiver has been appointed for the corporation in a suit brought by the state under statutory authority, since the receivership does not change the title to the property, but merely places it in the custody of the law for the protection of all interested parties.

   [Ed. Note.—For other cases, see States, Cent. Dig. § 108; Dec. Dig. § 110.*]

3. SUBROGATION (§ 7*)—SURETY—PAYMENT OF DEBT TO STATE.

   A surety who has paid a debt due to a state for which the state as sovereign was entitled to priority of payment from the property of the principal debtor is subrogated to such right.

   [Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 17, 18, 21–29, 38, 77, 83, 92; Dec. Dig. § 7.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity.   Suit by the American Bonding Company of Baltimore, Md., against S. G. Reynolds, as receiver of the First Trust & Savings Bank of Billings, Mont.   Decree for complainant.

Walsh & Nolan, of Helena, Mont., for complainant.
Hathhorn & Brown, of Billings, Mont., for defendant.

BOURQUIN, District Judge.   [1] Complainant seeks to recover a debt due the state of Montana from an insolvent bank of which defendant is receiver by virtue of appointment by a competent court on petition by said state by statutory authority, the debt being for public funds deposited in said bank by the state treasurer, for which complainant was surety, all by statutory authority, and which debt it paid. The funds of said bank are insufficient to pay all creditors.   Complainant contends that public debts are entitled to priority, in that the state, having adopted the common law of England, succeeds to or is vested with a like prerogative of the crown.

Defendant contends that (1) the state has no such priority; (2) if it has, it cannot be asserted after the debtor's property has passed to a receiver.   This prerogative of the crown or king of England is one of many attributes of sovereignty wherever it resides.   The king, being the repository of sovereign power and authority, the supreme executory power and duty, is vested with these prerogatives.   They consist of certain rights, powers, and privileges essential to the dignity of royalty, or necessary to the general welfare of the entire community, and which are denied to individuals.   The first are direct; the second incidental.   They are dictated by expediency, necessity, and public policy. That here involved and like are justified, in that, where the rights and interests of all the people meet those of one of them, the former is of more importance and must prevail.   The crown's priority over subjects in payment of debts is to secure and conserve the revenues—the life blood of the state, that the latter may be maintained in peace and war and its obligations discharged.   It is of the incidental prerogatives and belongs to the king, not as an individual, but parens patriæ, or as universal trustee for the people.   It is, in fact, a reservation or exception to the general course of law in favor of the public or for its good. From its nature its origin may be said to be higher than, superior to, and to antedate the common law—of the fundamentals of all government.   Its existence is suggested in Magna Charta.   Coke notes that Littleton twice refers to it as the law.   Blackstone says it is out of the course of the common law, and, while as a principle it enters into the British Constitution, in Halsbury's Laws of England it is said that it is created and limited by the common law.   But whether it is of those prerogatives that necessarily enter into the political being of every state and so as much into ours as into that of England, or is of and created by the common law, it would seem to be of the law of Montana.   The statutes of the latter provide that, where they declare the law, there is no common law.   Otherwise, if not repugnant to, inconsistent, or in conflict with the Constitution or statutes of the state or United States, and if of a general nature and applicable, the common law of England is, and shall be, the law and rule of decision.   Montana R. S. §§ 3552,

8060. And so has been the law in Montana for more than 40 years. There is no statute in this state relating to the priority of public debts. The rule of the common law in respect thereto is not objectionable in any of the particulars aforesaid. That it is of a general nature and applicable to the state's institutions and consistent with the spirit thereof cannot be gainsaid. That it is of general benefit and value is evidenced by the fact that the United States and some of the states have established it by statute, but it is not clear the fundamental law of states is not so in the beginning and apart from statute. These statutes may be taken as approval of the principle of priority of public debts, as evidence of the rule's applicability, and as largely declaratory of inherent or common law. Since this prerogative of the crown attaches to sovereign power wherever it resides (see Bank v. U. S., 19 Wall. 239, 22 L. Ed. 80, U. S. v. Hewes, Fed. Cas. No. 15,359), it must attach to Montana, a sovereign state. U. S. v. Bank of North Carolina, 6 Pet. 35, 8 L. Ed. 308, is not opposed to this conclusion. In that case there was involved a public debt of a particular class with which Congress had dealt presumably with intent to establish a complete system in respect thereto. Under such circumstances the statute furnishes the only rule. See Bank v. U. S., 107 U. S. 448, 2 Sup. Ct. 561, 27 L. Ed. 537. It may be noted that the opinion of the court in U. S. v. Bank of North Carolina, supra, was delivered by Justice Story, who earlier on circuit decided U. S. v. Hoar, Fed. Cas. No. 15,373, and therein gave full recognition to like prerogatives as inherent in the crown and states, needing no statute to establish or effectuate them.

Be it as it may, however, I am persuaded there is no escape in reason from the conclusion that by adopting the common law Montana adopted the prerogative rule of priority of public debts. That the law may not have been heretofore invoked is not considered important. Many laws, statutory as well as common, are quiescent for years, but are not thereby repealed or abrogated. No occasion to appeal to them may have arisen. The weight of authority and what seems to be the better reason is followed here. Cases thereon may be found collated at 18 Cyc. 550; 36 Cyc. 871; 29 L. R. A. (N. S.) 226, 1 L. R. A. (N. S.) 255. See Carnegie Trust Co. Case, 151 App. Div. 606, 136 N. Y. Supp. 466; Trust Co. v. Ry. Co., 186 Fed. 291, 110 C. C. A. 1. To contend that this valuable and necessary prerogative or right is arbitrary and discretionary and that none can complain if the state refuses to exercise it is to contend it is discretionary with the state's officers to enforce the law, discharge their duty, and conserve the revenues and interests of the people. If true where no one has a special interest therein, it is not true in respect to a surety who pays the state's debt, and succeeds to the state's right, or is entitled to subrogation. This law of priority is not that of the ancient common law with all its rigorous methods of enforcement, but is that of the modified common law as it was when adopted by Montana. The right thereof can be exercised so long as the debtor's title to the property out of which it is sought to make the public debt is not divested. And this is true whether the property is levied upon and seized in the debtor's posses-

sion, or is in custodia legis when the priority is asserted. See Middlesex Freeholders' Case, 29 N. J. Eq. 268. At common law, even though another creditor has procured levy and seizure of the goods of the king's debtor, at any time before sale under the writ, the king's prerogative or priority prevails if asserted.

[2] Although the bank here involved is in the hands of a receiver appointed on the state's petition, its title to its property has not been divested. While the receiver is statutory to the extent that he is appointed by virtue of statutory authority under circumstances not of themselves warranting the appointment by a court of chancery, yet he has no greater or other rights and powers than those of a chancery receiver for the statute creates none.

A court of chancery's receiver does not take title to the property involved, but only possession as an officer of the court, and to dispose thereof as the court directs. The statute by virtue of which this defendant was appointed does not necessarily contemplate a winding-up of the affairs of the bank. It is not dissolved and may resume. The state has not waived its priority. The statute made it the duty of the state to petition for a receiver for the protection of all interested parties. Therein is nothing annulling the law of priority of public debts, and the discharge of this statutory duty is not inconsistent therewith. When a court of chancery takes possession of property by its receiver, it is familiar law the owner's title is not divested and in administration thereof the law of priorities and preferences govern in the payment of debts. Nor would the fact that the state received security from the bank seem to affect priority. It is but a precautionary measure of value to the state, and, injuring no one, the security to be primarily resorted to if the state pleaseth, or for the state's protection if in the exercise of its priority the bank's assets are insufficient to satisfy the state's debt.

[3] If another for reasonable cause pays the debtor's debt to the king, at common law he succeeded to the king's priority. Formerly a creditor of the king's debtor could not sue him without first satisfying the king's debt, but, having satisfied it, he succeeded to the king's rights in respect thereto. And so is it by subrogation.

Complainant, surety for the bank, necessarily paid the latter's debt to the state, and so succeeds to the state's right. It is entitled to recover here, and decree accordingly.