AETNA ACCIDENT & LIABILITY CO., APPELLANT, *v.* MILLER, RECEIVER, RESPONDENT.

(No. 4,094.)

(Submitted January 7, 1918.   Decided January 24, 1918.)

[170 Pac. 760.]

*States—Insolvent Banks—Preferences—Sovereign Prerogatives —Sureties—Subrogation—Common Law—Waiver.*

States—Insolvent Banks—Deposits—Suretyship—Subrogation.
  1.   Where deposits of state funds are secured by a bond and the surety is compelled to pay the amount thereof upon failure of the bank, the right of the state, if existent and not lost in some way, passes by subrogation to the surety.

Same—Preferences—Common Law.
  2.   *Held,* under the common law, in the absence of statutory or constitutional provision on the subject, that the state is entitled to a preference, as a prerogative right, over the unsecured creditors of an insolvent bank in which it has funds on deposit.

Common Law—What Constitutes.
   3.   "Common law" means the common law of England as applied and modified by the courts of this country up to the time it became the rule of decision in this state.
   [As to what the "common law" includes, see note in Ann. Cas. 1913E, 1222.   As to extent of adoption of common law, see note in Ann. Cas. 1913E, 1232.]

States—Prerogative Rights—Waiver.
   4.   No right of the state can be waived by any power short of that of the state; therefore the prerogative right of the state to a preference was not defeated by an assignment of its claim to the surety, through the instrumentality of a ministerial officer.

Same—Statutes—Diminishing Powers—Construction.
   5.   The state is not bound by the general language of a statute which tends to restrain or diminish its powers, rights or interests.

Same—Preferences—Right Effective When.
   6.   The right of preference is effective only while the debtor retains title to the property out of which payment is sought to be made.

Same—Banks—Receivership—Preferences.
   7.   A receivership does not divest the title of the owner; hence the appointment of a receiver of a bank did not result in such a divestiture of title as to destroy the state's right of preference as against general creditors.

*Appeal from District Court, Carbon County; A. C. Spencer, Judge.*

ACTION by the Aetna Accident & Liability Company against H. B. Miller, as receiver of the Farmers' State Bank of Bridger, Montana.   Judgment for the receiver and plaintiff appeals. Reversed and remanded.

*Messrs. Frank & Gaines,* for Appellant, submitted a brief; *Mr. R. F. Gaines* argued the cause orally.

Practically a parallel set of facts and constitutional and Code provisions to the case at bar are to be found in the cases of *In re Carnegie Trust Co.,* 151 App. Div. 606, 136 N. Y. Supp. 466, affirmed, 206 N. Y. 390, 46 L. R. A. (n. s.) 260, 99 N. E. 1096, and *United States, F. & G. Co.* v. *Carnegie Trust Co.,* 151 App. Div. 435, 146 N. Y. Supp. 804, affirmed, 213 N. Y. 629, 107 N. E. 1087.   These cases sustain appellant's contention at all points, and, we submit, demand a reversal of the judgment.   Other decisions to the same general effect, and in addition to those heretofore cited, are: *Orem* v. *Wrightson,* 51 Md. 34, 34 Am. Rep.

286; *Booth* v. *State,* 131 Ga. 750, 63 S. E. 502; *Central Bank &
Trust Corp.* v. *State,* 139 Ga. 54, 76 S. E. 587; *United States &
G. Co.* v. *Rainey,* 120 Tenn. 357, 113 S. W. 397; *American Bond-
ing Co.* v. *Reynolds,* 203 Fed. 356, 358; 26 Am. & Eng. Ency.
of Law, 479. The general doctrine that a surety may assert
against his principal, upon his payment of the latter's debt, any
right or remedy that the creditor has, is well settled.    (37 Cyc.
363–367, 380; 27 Am. & Eng. Ency. of Law, 202–210; 4 Pom-
eroy's Equity Jurisprudence, sec. 1419; see, also, note to *Ameri-
can Bond Co.* v. *National Mechanics' Bank,* 99 Am. St. Rep. 476,
506, 507.)

The right of a surety of a debtor of a state to assert the pref-
erential right of the state is declared in the following cases:
*United States F. & G. Co.* v. *Carnegie Trust Co.,* 151 App. Div.
435, 146 N. Y. Supp. 804, and cases; *Cheesbrough* v. *Millard,* 1
Johns. Ch. (N. Y.) 409, 7 Am. Dec. 494; *Orem* v. *Wrightson,
supra;* see, also, note to *American Bond Co.* v. *National Me-
chanics' Bank,* 99 Am. St. Rep. 488, 497, 509. These last-men-
tioned authorities also make clear the principle that the right to
stand in the creditor's shoes and assert his privileges depends, not
on the action of the creditor, but upon the payment of the prin-
cipal's debt; and these cases also demonstrate that the failure
of the state treasurer of the state of Montana to claim as a pre-
ferred creditor, does not affect the right of appellant to assert
such a claim.

The Constitution and Codes of this state do not aid in the
determination of this appeal. A constitutional provision, very
similar to section 39 of Article V of our Constitution, was held
in *State* v. *Foster,* 5 Wyo. 199, 63 Am. St. Rep. 47, 29 L. R. A.
226, 38 Pac. 926, not to be an assertion of the state's rights to
a preference in payment. Whether the reasoning of that case
on this point can be adopted by this court in view of different
fact conditions and because of the fact that the dissolution of a
corporation upon its assets being exhausted in *pro rata* payments
among creditors, in effect extinguishes the obligation, does not
prejudice appellant's position, for there was no suggestion

advanced that the provision operated as a waiver of the right. Nor do we believe that the provisions of section 13 of Article XII of the Constitution or of section 183, Revised Codes, militate against appellant's contention. Certainly the language used evidences no clear and unequivocal intention to waive any rights belonging to the state; and a contrary conclusion, in the face of similar provisions, has been reached by the courts of Georgia and New York. (*Booth* v. *State,* 131 Ga. 750, 63 S. E. 502; *In re Carnegie,* 151 App. Div. 606, 136 N. Y. Supp. 466.)

*Messrs. Nichols & Wilson,* for Respondent, submitted a brief.

Our contention here is that the Michigan, South Carolina and Mississippi courts have correctly announced the law which is controlling in this case; that there being no constitutional or statutory provisions in Montana conferring upon the state any preference right of payment out of the funds of an insolvent, the state could not have established a preferred claim against the respondent receiver. Obviously if the state could not establish such claim, its assignee, the appellant herein, cannot. (*Commissioner of Banking* v. *Chelsea Savings Bank,* 161 Mich. 691, 125 N. W. 424; *State* v. *Harris,* 2 Bail. (S. C.) 598; *Klinck* v. *Keckley,* 2 Hill Eq. (S. C.) 250, 256; *Potter* v. *Fidelity & Deposit Co.,* 101 Miss. 823, 58 South. 713.)

Assuming, however, that the sovereign right of preference was adopted as a part of the law of Montana by the enactment of sections 3552 and 8060, Revised Codes, and assuming, further, that it has not been abrogated by the provisions of the Codes, still the contention of appellant herein must fail because of the fact that it was not sought to assert the right in this case until after the debtor's title to the property had been divested and the property had passed beyond its control. As an exception to the common-law rule, the authorities uniformly hold that the sovereign right of preference must be exercised while the insolvent retains title to the property against which the preference is claimed, and while he still possesses control thereof. (*Board of Chosen Freeholders* v. *State Bank,* 29 N. J. Eq. 268 (affirmed

in 30 N. J. Eq. 311) ; *State* v. *Foster,* 5 Wyo. 199, 63 Am. St. Rep. 47, 29 L. R. A. 226, 38 Pac. 926; *State* v. *Williams,* 101 Md. 529, 109 Am. St. Rep. 579, 4 Ann. Cas. 970, 1 L. R. A. (n. s.) 254, 61 Atl. 297; *Hoke* v. *Henderson,* 14 N. C. (3 Dev. L. 12) 17; *Commissioner of Banking* v. *Chelsea Savings Bank, supra.*) The title of the Farmers' State Bank of Bridger to all of its property and assets, real and personal, was divested by the appointment of the respondent receiver. (*Brynjolfson* v. *Osthus,* 12 N. D. 42, 96 N. W. 261; *American Nat. Bank* v. *National Benefit & Casualty Co.,* 70 Fed. 420; *Cobb* v. *Camden Savings Bank,* 106 Me. 178, 20 Ann. Cas. 547, 76 Atl. 667, 670; *Tillinghast* v. *Champlin,* 4 R. I. 173, 67 Am. Dec. 510; *Ryan* v. *Kingsbery,* 88 Ga. 361, 14 S. E. 596, 606.) From the inception of the receiver's possession, the property of the bank was immune from attachment or seizure by any creditor of the bank, and no creditor could in any wise interfere with the receiver's possession, control or disposition thereof. (*Gardner* v. *Caldwell,* 16 Mont. 221, 40 Pac. 590; *In re Tyler,* 149 U. S. 164, 37 L. Ed. 689, 13 Sup. Ct. Rep. 785.)

MR. JUSTICE SANNER delivered the opinion of the court.

On May 8, 1915, the affairs of the Farmers' State Bank of Bridger were in such condition that the district court of Carbon county, upon the complaint of the attorney general filed pursuant to sections 59 and 60 of Chapter 89, Laws of 1915, appointed the respondent H. B. Miller as its receiver. There was at the time on deposit with the bank, subject to check, $10,000 of state funds "theretofore raised by levies of taxes, assessments and collections" secured by a bond in said amount, upon which bond the appellant, Aetna Accident & Liability Company, stood as surety. Thereafter the surety, by and because of the conditions of such bond, was compelled to and did pay to the state the amount of the penalty of the bond, to-wit, $10,000. In consequence of these circumstances, as well as of an assignment to it of the state's claim, the surety brought this action seeking an adjudication that it is entitled to the payment of said sum in

preference to the claims of general creditors, and an order directing the receiver to make such payment; he having in his hands funds sufficient for that purpose. Judgment for the receiver followed an order sustaining his general demurrer to the complaint, and this appeal is from that judgment.

The fundamental question presented is: Did the state have the [1] preference right asserted? If it did, there does not seem much room for doubt that, unless in some way lost, such right passed by subrogation to the appellant. (Rev. Codes, secs. 5691, 5692; *American Bond Co.* v. *National Mechanics' Bank*, 99 Am. St. Rep. 488, note; *United States F. & G. Co.* v. *Carnegie Trust Co.*, 161 App. Div. 435, 146 N. Y. Supp. 804, affirmed 213 N. Y. 629, 107 N. E. 1087.)

Whether the state was entitled to a preference over all the [2, 3] unsecured general creditors of the insolvent bank cannot be determined by resort to any express statute or constitutional provision, for confessedly none such exist; hence the question is one to be resolved according to the common law. (Rev. Codes, secs. 3552, 8060.) Just what is meant by the "common law" in this connection, however, is a matter open to definition. Broadly speaking, it means, of course, the common law of England; but it means that body of jurisprudence as applied and modified by the courts of this country up to the time it became a rule of decision in this commonwealth. (*State ex rel. Metcalf* v. *District Court*, 52 Mont. 46, 50, Ann. Cas. 1918A, 985, L. R. A. 1916F, 132, 155 Pac. 278.) The distinction is noted here because the common law as administered in England without a doubt commands the recognition of the sovereign as entitled to the preference (1 Coke upon Littleton, 131B; 8 Bacon's Abridgment, 91); whereas the respondent insists that the common law as recognized and applied in the United States is otherwise.

At the time the territory of Montana was organized and first formally adopted the common law as our rule of decision in the absence of statute (Bannack Stats., p. 356), there existed a vast number of decided cases from almost all of the states holding that divers and sundry prerogatives ascribed to the king at

common law had passed to the states—those only being denied which had attached to the king in his personal character rather than as *parens patriae* or personification of the sovereignty. Among these cases, which are illuminative collaterally, were thirteen directly bearing upon the question here involved, to-wit: Seven from Maryland (*State* v. *Bank of Maryland,* 6 Gill & J. 205, 26 Am. Dec. 561; *State* v. *Mayor etc. of Baltimore,* 10 Md. 504; *Jones* v. *Jones,* 1 Bland, 443, 18 Am. Dec. 327; *Smith* v. *State,* 5 Gill, 45; *Contee* v. *Chew's Exr.,* 1 Har. & J. 417; *State* v. *Rogers,* 2 Har. & McH. 198; *Murray* v. *Ridley,* 3 Har. & McH. 171), one from Georgia (*Robinson* v. *Bank of Darien,* 18 Ga. 65), one from North Carolina (*Hoke* v. *Henderson,* 14 N. C. 12, 20, 24), two from South Carolina (*State* v. *Harris,* 2 Bail. 598; *Klinck* v. *Keckley,* 2 Hill Eq. 250, 256), and one from the supreme court of the United States (*United States* v. *Bank of North Carolina,* 6 Pet. 29, 8 L. Ed. 308). Of these, only the two opinions from South Carolina deny the right to preference as a surviving prerogative,—and they do this without serious attempt to soberly reason the matter. There was an earlier decision in that state referred to in the *Klinck Case* (*Commissioners, etc.,* v. *Greenwood,* 1 Desaus. (S. C.) 450), which seems to hold that the right, if it exists, cannot prevail over mortgages, judgments and other liens—a proposition which, so far as we know, no American court has ever disputed.

When our state Constitution was adopted and the Compiled Statutes of 1887 (including section 201, Div. 5) were continued in force, the decided cases bearing upon the particular claim here asserted had been increased by eight (*Central Trust Co.* v. *New York etc. R. Co.,* 110 N. Y. 250, 259, 1 L. R. A. 260, 18 N. E. 92; *In re Receivership Columbian Marine Ins. Co.,* 42 N. Y. (3 Keyes) 123, 3 Abb. Dec. (N. Y.) 239; *State* v. *Baltimore & O. Ry.,* 34 Md. 344, 374; *Orem* v. *Wrightson,* 51 Md. 34, 34 Am. Rep. 286; *State* v. *Dickson,* 38 Ga. 171; *Seay* v. *Bank of Rome,* 66 Ga. 609; *State* v. *Rowse,* 49 Mo. 586, 592; *Board of Chosen Freeholders, etc.,* v. *State Bank,* 29 N. J. Eq. 268, affirmed 30 N. J. Eq. 311), of which one, the New Jersey case, denied

the right "as an actual prerogative of government," chiefly because it had not been exerted or recognized in that state for over a hundred years and "a prerogative which has remained so long practically useless can hardly be said to exist."

Since the adoption of our state Constitution and up to the present time, a considerable addition has been made to the decisions, notably: *Booth* v. *State,* 131 Ga. 750, 63 S. E. 502; *In re Carnegie Trust Co.,* 151 App. Div. 606, 136 N. Y. Supp. 466, affirmed 206 N. Y. 390, 46 L. R. A. (n. s.) 260, 99 N. E. 1096; *United States F. & G. Co.* v. *Carnegie Trust Co.,* 161 App. Div. 435, 146 N. Y. Supp. 804, affirmed 213 N. Y. 629, 107 N. E. 1087; *Central Bank & Trust Corp.* v. *State,* 139 Ga. 54, 76 S. E. 587; *United States F. & G. Co.* v. *Rainey,* 120 Tenn. 357, 113 S. W. 397; *American Bonding Co.* v. *Reynolds* (D. C.), 203 Fed. 356, reversed, *Brown* v. *American Bonding Co.,* 210 Fed. 844, 127 C. C. A. 406; *State* v. *Foster,* 5 Wyo. 199, 63 Am. St. Rep. 47, 29 L. R. A. 226, 38 Pac. 926; *State* v. *First State Bank* (N. M.), 167 Pac. 3; *Central Trust Co.* v. *Third Ave. Ry. Co.,* 186 Fed. 292, 110 C. C. A. 1; *Potter* v. *Fidelity Deposit Co.,* 101 Miss. 823, 58 South. 713; *Commissioner* v. *Bank,* 161 Mich. 691, 704, 125 N. W. 424, 127 N. W. 351. The last five are usually cited as opposed to the right here claimed, while the others vigorously uphold it; but the five referred to are not entitled to be classed as authoritative voices in opposition. The Wyoming and New Mexico cases, for instance, actually recognize the right, but deny its application to the particular instance; the federal opinion is squarely in the teeth of a prior declaration to the contrary by the circuit court of appeals of New York, *viz., In re Carnegie Trust Co.,* 206 N. Y. 390, 46 L. R. A. (n. s.) 260, 99 N. E. 1096; the Michigan decision consists of two utterances, one discussing the preference as a prerogative right, but saying, "The question is not presented," the other seeming to hold that explicit legislation is necessary to put the right into effect; the Mississippi case is squarely against the right, but assigns no reason except *Shields* v. *Thomas,* 71 Miss. 260, 42 Am. St. Rep. 458, 14 South. 84,

which, so far as we can see, has not the remotest bearing upon the question.

Special notice must, however, be taken of *American Bonding Co.* v. *Reynolds, supra,* and *Brown* v. *American Bonding Co., supra,* because the case, which had its issue in these opinions, arose in this state and represents an effort to settle the law of this state upon the identical questions now before us.   Ordinarily, these utterances would be entitled to very respectful consideration, although in a matter of this sort the voice of the state tribunals is supreme.   But the case presents a singular situation. The district court held that the state of Montana has a preference over general creditors to payment from an insolvent debtor; that the right is not discretionary in the officers of the state, but is of a prerogative character; and that it may pass by subrogation to the debtor's surety compelled to make such payment. This was reversed and its standing as authority destroyed on appeal; yet the opinion on appeal is not persuasive for these reasons: It assumes the domestic law of New York to be as stated by the second circuit court of appeals (*Central Trust Co.* v. *Third Ave. Ry. Co., supra*) against the claim to such prerogative right, notwithstanding the declaration of the highest court of that state in favor of the claim (*In re Carnegie Trust Co., supra*) ; it suggests that since the United States asserts its preference under specific statute, and not upon prerogative, this state may not possess any prerogative preference because "no state can have any greater sovereign right than the general government of the entire country," notwithstanding that the federal Constitution is a grant of power and, under Amendment X, states can and do have sovereign rights which the general government does not possess; it raises the question whether, if the prerogative right exists, such right can pass to a private party by subrogation, without actually deciding whether such right does exist or can so pass; and it determines the appeal upon a proposition which we cannot accept, *viz.:* that the prerogative right, [3] if it exists and can so pass, may be defeated because a ministerial officer of the state has failed to cast its claim in proper

form and has assigned that claim to the surety. If anything may be taken as a truism, it is that no right of the sovereign can be waived by any power short of the sovereign; so that, whatever claim on behalf of the state was filed with the receiver, the measure of its demand was not the form of the claim but the right behind the claim, and if that right passed by subrogation, no written assignment of any kind could aid it or destroy it.

So much for the decisions, considered numerically. By states and by substance the disparity between the two classes is very marked. Those opposed to the preference seem so overwhelmed by the term "prerogative" that they lose sight of the reality for which it stands and which is inseparable from sovereignty in any form. The prevailing view, and the view that has always held the weight of authority, is emphatically in favor of the preference, and the philosophy of it is sententiously expressed by the supreme court of the United States thus: "The right to priority of payment of debts due to the government is a prerogative of the crown well known to the common law. It is founded, not so much upon any personal advantage to the sovereign, as upon motives of public policy, in order to secure an adequate revenue to sustain the public burdens, and discharge the public debts." (*United States* v. *Bank of North Carolina, supra.*) Likewise, the New York court of appeals: "Under our Constitution we have no king. The king therefore, and the prerogatives that were personal to him being repugnant to our Constitution, are abrogated; but his sovereignty, powers, functions, and duties, in so far as they pertain to civil government, now devolve upon the people of the state, and consequently are not in conflict with any of the provisions of our Constitution. Inasmuch, therefore, as the claims or moneys due the king for the support and maintenance of the government, whether derived from taxes or other sources of income, were preferred over the claims of others, it follows that under the first subdivision of the  *  *  *  Constitution of 1777, quoted, such preference became a part of the common law of our state, and is so continued under our present Constitution." (*In re Carnegie Trust Co.,*

*supra.*) Finally, the court of appeals of Maryland: "Notwithstanding all that has been said in disparagement of this right of priority, it is not perceived to be inconsistent with the principles or spirit of our political institutions. * * * It * * * is a rule only in the distribution of the property of the debtor, requiring the debt due to the state to be first paid, where the individual debtor has no antecedent lien overreaching it. The government of the state is established for the good of the whole, and can only be supported by means of its revenue; which revenue the good of the whole requires to be protected. And as it can only act by its agents, who, no matter how vigilant, cannot always be present to protect its rights, a priority in the payment of its debts (which must always be of a public nature) is necessary to enable it to accomplish the ends of its institution. It is not therefore opposed to a sense of right that the interests of all should prevail over that of an individual, when it can be asserted without disturbing vested rights, which diligent creditors can more readily acquire than the government through its agents." (*State* v. *Bank of Maryland, supra.*)

Some contention is made that the provisions of Code sections 6123, 6124, 6125, and 6140, by defining "creditors" and authorizing preferences, operate as an abrogation of any special right in the state under the common law. We do not appreciate the force of this. Sections 6123 and 6124 are not even suggestive. Section 6125 provides that a debtor may pay or secure one creditor in preference to another; if this has any relation to cases of insolvency, it is limited by the rule stated in section 6142, that no voluntary preference can affect or impair the right of a creditor whose claim stands preferred by contract or by operation of law. Section 6140 does deal with insolvency proceedings, and into such it injects an automatic preference in favor of wage claims to an amount not exceeding $200 each; but this at most could amount to nothing more than an assent by the state to share its preference in such cases with such claims. Whether it goes so far is doubtful in the absence of an express declaration to that effect, since the rule—accepted universally we believe—

[4]  is that the sovereign authority is not bound by the general language of a statute which tends to restrain or diminish the powers, rights or interests of the sovereign.  (*United States* v. *Herron,* 20 Wall. (U. S.) 251, 22 L. Ed. 275; *Guaranty Title & Trust Co.* v. *Title Guaranty & S. Co.,* 224 U. S. 152, 155, 56 L. Ed. 706, 32 Sup. Ct. Rep. 457.)

It is insisted, however, that under no theory of the sovereign [5, 6]  prerogative accepted in this country can the state's preference prevail "because it was not sought to assert the right in this case until after the debtor's title to the property had been divested and the property passed beyond its control."  Undoubtedly the sovereign right of preference is effective only while the debtor retains title to the property out of which payment is sought to be made; but is it correct to say that there was such a divestiture here as to forestall the preference?  Counsel cite, as supporting the affirmative, certain cases involving assignments for the benefit of creditors.  These, however, are unavailing, because, as we have seen, no such assignment can be effective in this jurisdiction to prevent a preference created by operation of law.  Equally valueless are the holdings cited to the effect that a receivership divests the title of the owner; for, whatever may be the law elsewhere, the rule is different in this state. (*Gardner* v. *Caldwell,* 16 Mont. 221, 224, 40 Pac. 590; *Lyon* v. *United States Fidelity & Guaranty Co.,* 48 Mont. 591, 600, Ann. Cas. 1915D, 1036, 140 Pac. 86.)   But, it is said, by the receivership the bank lost all control over its assets, and this is sufficient to defeat the preference.  It is certainly true that during receivership the owner loses the control of his property, and in receiverships like this such control may never be regained.   Yet to regain control is always theoretically possible, for the purpose of any receivership is to husband the property thereby sequestered for whoever may be entitled to it.   Nor is it decisive that the receiver may sell, under order of court, because that power is given and may be used only in furtherance of the purpose to husband; so, too, an executor or administrator may sell, yet it cannot be contended that he has title or such control over

the real estate of his decedent as would defeat a lawful preference.   A receivership and an assignment for the benefit of creditors are two different things (*Babcock* v. *Maxwell,* 21 Mont. 507, 513, 54 Pac. 943), but this court has said that the position of a receiver is no better and no higher than that of an assignee; he occupies a situation not materially different from that of the insolvent prior to the appointment; he is the arm of the court to accomplish, when necessary, the distribution of the assets of the insolvent according to the rights of those entitled thereto. (*Williams* v. *Johnson,* 50 Mont. 7, Ann. Cas. 1916D, 595, 144 Pac. 768.)   This of necessity involves a recognition of the order in which such rights shall come.   The present receivership was procured by the state, under its own banking laws, for the protection of itself and other creditors; it would be a strange result if such a proceeding so brought must operate to impair the right thus sought to be conserved.

We see no rational escape from the view that the order sustaining the demurrer to the complaint was a mistake.   The judgment founded thereon is therefore reversed, and the cause remanded for further appropriate proceedings.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY concurs.

MR. CHIEF JUSTICE BRANTLY, being absent, did not hear the argument and takes no part in the foregoing decision.