(161 App. Div. 435)

UNITED STATES FIDELITY & GUARANTY CO. v. CARNEGIE TRUST CO. et al.

(Supreme Court, Appellate Division, First Department. March 6, 1914.)

1. STATES (§ 110*)—TRUST COMPANIES—INSOLVENCY—CLAIMS—PREFERENCE.

> The state was entitled to a preference upon the liquidation of an insolvent trust company, designated as a state depositary, in which state funds were deposited.
>
> [Ed. Note.—For other cases, see States, Cent. Dig. § 108; Dec. Dig. § 110.*]

2. SUBROGATION (§ 7*)—RIGHTS OF SURETY—REMEDIES OF CREDITOR.

> In such case, a surety by virtue of its payment to the state of the amount for which it was liable became subrogated to the state's right to reimbursement out of the assets of the depositary.
>
> [Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 17, 18, 21–29, 58, 77, 83, 92; Dec. Dig. § 7.*]

3. SUBROGATION (§ 31*)—SURETY—CREDITOR'S RIGHTS AND PRIVILEGES.

> A surety paying the debt of his principal is subrogated to all of the creditor's rights, liens, judgments, and mortgages, without assignment from the creditor.
>
> [Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 70–91; Dec. Dig. § 31.*]

4. SUBROGATION (§ 33*)—SURETY—PREFERENCE.

> A surety which on liquidation of its principal, a trust company designated as a depositary of state funds, paid the amount of its liability to the state, was thereby subrogated to the state's preference in the distribution of the depositary's funds.
>
> [Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 96–98; Dec. Dig. § 33.*]

5. SUBROGATION (§ 35*)—SURETY—WAIVER OF PREFERENCE.

> In such case, the surety filing its claim for reimbursement immediately after its payment of its liability, but not claiming a preference until after the Court of Appeals had sustained the state's claim to a preference, did not thereby waive its right to be subrogated to the state's preference.
>
> [Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 107, 108; Dec. Dig. § 35.*]

6. SUBROGATION (§ 33*)—LIQUIDATION—CLAIMS—INTEREST.

> In such case, the surety was not entitled to a preference for the accrued interest upon the sum paid by it from the date of payment, but as

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

against the trust company was entitled, if the assets were sufficient, to interest ratably with the claims of other creditors.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 96–98; Dec. Dig. § 33.*]

7. EXECUTORS AND ADMINISTRATORS (§ 416*)—ADMINISTRATION—INTEREST.
    During administration of an insolvent estate, no interest should be allowed to creditors as between themselves.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1652–1654; Dec. Dig. § 416.*]

Action by the United States Fidelity & Guaranty Company against the Carnegie Trust Company. Submission of controversy upon an agreed statement of facts under sections 1279–1281 of the Code of Civil Procedure. Judgment ordered in favor of the plaintiff.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

H. Snowden Marshall, of New York City, for plaintiff.
Frank M. Patterson, of New York City, for defendants.

SCOTT, J. The sole question to be determined in this controversy is whether or not the plaintiff, as a surety for the Carnegie Trust Company, an authorized depositary of state funds, and which has fulfilled the condition of its undertaking by paying to the state the full amount for which it was liable thereunder, is entitled to be subrogated to a preference and priority of payment in the distribution of the funds of said trust company; it having been decided that the state itself is entitled to such preference and priority. Matter of Carnegie Trust Co., 151 App. Div. 606, 136 N. Y. Supp. 466; s. c., 206 N. Y. 390, 99 N. E. 1096, 46 L. R. A. (N. S.) 260.

The Carnegie Trust Company, a domestic banking corporation, was a duly designated depositary for the receipt of canal funds of the state of New York under the provisions of section 62 of the State Finance Law (chapter 413, Laws 1897, as amended by chapter 372, Laws 1905). On or about October 3, 1910, plaintiff, a foreign corporation duly authorized to transact business in this state, executed a bond to the people of the state of New York in the sum of $75,000 conditioned as required by law for the proper security of funds deposited on account of the canal fund and the general fund of the state of New York, and more particularly guaranteeing that the Carnegie Trust Company would safely keep, and well and truly account for and pay over, all moneys which were then and should thereafter be on deposit with or held by said trust company, or that were due or should become due from said trust company, or for which said trust company in any way should become liable to the state of New York. In said bond the liability of plaintiff was conditioned to be such proportion of the total liability of the Carnegie Trust Company to the state of New York as the amount of said plaintiff's obligation as surety ($75,000) should bear to the total amount of the principal's obligation ($265,000).

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

On January 7, 1911, under the provisions of the Banking Law of the state of New York, George C. Van Tuyl, Jr., as Superintendent of Banks of the state of New York, took possession of the property and business of the said Carnegie Trust Company, and has ever since retained such possession and is, at the present time, engaged in the liquidation of the affairs of said trust company.

On said 7th day of January, the state of New York had on deposit with the Carnegie Trust Company the sum of $135,839.90 of moneys belonging to the canal fund and the general fund of the state of New York, and on January 12, 1911, the plaintiff paid to the Treasurer of the State of New York the sum of $37,471.12, being $75/265$ of the amount so on deposit with said Carnegie Trust Company belonging to the canal fund and the general fund of the state of New York. The state of New York executed an assignment to plaintiff in an instrument which acknowledged payment "in accordance with the provisions of said bond," and which recited that plaintiff "is duly subrogated to any and all of the rights of the people of the state of New York thereunder, and any and all rights of the people of the state of New York in the premises are hereby assigned" to the plaintiff. This assignment was executed by the State Comptroller. Plaintiff promptly and duly filed a claim for reimbursement out of the funds of the Carnegie Trust Company, and later claimed a preference and priority in the payment of such amount in subrogation to the right of the state of New York to such preference and priority. In consequence of the default of another surety for said Carnegie Trust Company, which had given a bond similar, save in amount, to that given by plaintiff, the state of New York was obliged to resort to the assets of said trust company for the payment of so much of the indebtedness to it from said company as had not been paid by this plaintiff. In making its claim the state asserted its right to a preference and priority in payment out of said assets, and its claim in this regard was upheld by this court and the Court of Appeals. Matter of Carnegie Trust Company, supra. The right of the plaintiff to reimbursement out of the assets of the Carnegie Trust Company is not questioned, and it has already been paid, in common with other general and unpreferred creditors, 35 per cent. of its claim. It is conceded that there remains in the hands of the Superintendent of Banks an undistributed amount of money, assets of said Carnegie Trust Company, more than sufficient to pay plaintiff's claim in full.

[1, 2] We find therefore as a starting point for the consideration of the question submitted the following propositions either conceded by the defendants, or firmly established by law: First, that the claim of the state, for the payment of which plaintiff was the surety, was entitled to a preference and priority of payment over general creditors. Second, that plaintiff, by virtue of its payment to the state of the amount for which it was bound as surety, has become entitled, by subrogation, to the reimbursement out of the assets of the trust company, of the amount paid to the state in satisfaction of its obligation as surety.

[3, 4] The sole question remaining is whether or not the plaintiff is also subrogated to the state's right to a preference over general creditors.

Although this question has not been directly passed upon in this state, it has been the subject of frequent consideration in other jurisdictions, and it appears to have been invariably held, save in the case of bail given for a person charged with crime, that a surety, paying a debt to the state for which the latter would have been entitled to a preference, takes by subrogation a like preferential right against his principal.   Where the right to such subrogation was denied to bail for an alleged criminal, the decision was put upon grounds of public policy because it was considered that the general rule should not be extended to such cases, "for this would be to aid the bail to get rid of their obligation and to release them from the motives to exert themselves in securing the appearance of the principle."   But the court was careful to show that it considered this case to be an exception to the general rule, for, speaking of that rule, it says: "This is clearly the rule where the principal obligation is payment of money or the performance of a civil duty."   United States v. Ryder, 110 U. S. 729, 4 Sup. Ct. 196, 28 L. Ed. 308.   In Manisty v. Churchill, 58 L. J. Ch. 136, 39 Ch. Div. 174–1889, the plaintiff who had been surety for Lord Churchill for the payment of a debt due the crown, and who had paid the debt, claimed, in proceedings to administer the insolvent estate of the principal debtor, "to stand in the place of the crown with all incidents of priority to other creditors." It was held that he was so entitled, and while the court refers to the Mercantile Law Amendment Act of 1856 as one which had removed any possible obstacle in the way of the successful assertion of such a claim, it expressed the opinion that, without that act, the plaintiff would have been entitled to the priority which he claimed.   The plaintiff calls our attention to a number of other cases which, under one set of circumstances or another, seem to sustain its contention.   Rex v. Bennett, Wrightwick, 1;   Am. Bonding Co. v. Reynolds (D. C.) 203 Fed. 356;   Enders v. Brune, 4 Rand. (Va.) 438;   Orem v. Wrightson, 51 Md. 41, 34 Am. Rep. 286;   Am. Bonding Co. v. Mechanics' Bank, 97 Md. 598, 55 Atl. 395, 99 Am. St. Rep. 466;   Myers v. Miller, 45 W. Va. 595, 31 S. E. 976;   Watts v. Eufaula Nat. Bank, 76 Ala. 478;   Lewis v. U. S. F. & G. Co., 144 Ky. 425, 138 S. W. 305, Ann. Cas. 1913A, 564.   The defendant criticises some of these authorities, but it is significant that we are cited to no case, save that of bail for an alleged criminal, that supports the contention of defendant that the surety paying a debt due from his principal to the government may not avail himself of all the rights and remedies which the government had, including the right to priority.

But apart from the reported decisions we consider that the plaintiff's contention is wholly sound.   It is familiar law that a surety paying the debt of his principal is entitled to be subrogated to all of the creditor's rights, privileges, liens, judgments, and mortgages, and that to enjoy the benefit of these no assignment from the creditor is necessary.   The surety, by the mere fact of payment is put into the shoes

of the creditor. If, in the case at bar, the state had had a lien, in the conventional sense, upon the assets of the Carnegie Trust Company, and plaintiff as surety had paid the debt of the trust company, it would have been entitled upon the plainest principles to be subrogated to the state's lien and to enforce the same. Memphis R. R. v. Dow, 120 U. S. 287, 7 Sup. Ct. 482, 30 L. Ed. 595; Sgobel v. Cappadonia, 8 App. Div. 303, 40 N. Y. Supp. 946. The state's absolute right to preference in the distribution of the assets of the trust company, if not technically a first lien thereon, was equivalent to a lien and had all the effect which a specific lien would have had. If, as seems to be undoubted, the plaintiff would, upon payment, have succeeded to a lien, we can see no reason why it should not be held to have succeeded to the equivalent. No injustice will be done to the general creditors of the trust company by allowing plaintiff's claim to a preference, as it merely continues in force the preferential right of the state, subject to which all creditors become such, and it is to be borne in mind that plaintiff's bond was not given for the benefit of any other creditor than the state.

[5] It is further urged, in behalf of the defendant, that plaintiff waived its right to a preference because, while it filed its claim for reimbursement immediately after its payment of the trust company's debt, it did not claim a preference until after the Court of Appeals had decided favorably the claim of the state to a preference. We do not consider that this constituted a waiver, which is generally a question of intention. By filing its claim generally, without then claiming a preference, the plaintiff did nothing inconsistent with its subsequent and present claim that it was entitled to priority of payment, and there is no claim that by postponing this claim the plaintiff has put the trust company or its creditors at a disadvantage, or has in any way estopped itself.

[6, 7] We do not think, however, that the plaintiff is entitled to a preference for the accrued interest upon the sum paid by it, since the date of payment. As against the trust company, if the assets be sufficient, it will be entitled to interest ratably with the claims of other creditors; but the rule is in the administration of an insolvent estate that as between the creditors themselves no interest should be allowed during the process of administration. People v. American Loan & Trust Co.; 172 N. Y. 371, 65 N. E. 200.

Judgment is therefore ordered in favor of the plaintiff in accordance with the foregoing opinion, with costs. All concur.