**In re COLUMBIA TOBACCO CO., Inc.**

No. 38047.

District Court, E. D. New York.

March 24, 1941.

Order Affirmed July 10, 1941.

See 121 F.2d 641.

William Walzer, of New York City (Raymond Gitlin, of New York City, of counsel), for trustee.

Harry Malter, of New York City, for petitioners Goldman, Malter and Goldman and pro se.

William J. McArthur, of New York City (Robert Gray, of New York City, of counsel), for United States Fidelity & Guaranty Co., claimant.

BYERS, District Judge.

Petition for certificate of review of determination of referee.

The two questions presented have to do with the effect here to be given to tax payments arising under State and City statutes imposing a cigarette tax.

The bankrupt was a wholesale dealer in cigarettes, tobacco and kindred products, and failed to pay certain taxes imposed by the said legislation; that is, it obligated itself to pay for tax stamps purchased on credit—as the law permitted—and payment was made instead by the United States Fidelity and Guaranty Company, a surety for the bankrupt, as to the State taxes;

and by the American Surety Company, likewise a surety for the bankrupt, as to the City taxes; concerning the latter, resort was had to the collateral deposited with the surety to secure its bond, and consequently the individuals who deposited that collateral assert their succession to the rights of the surety in this proceeding; no question is made concerning their capacity to appear and litigate this matter in place of the surety.

The questions are:

(1) Did the sureties by paying the tax become subrogated to the rights of the State and the City, respectively, so that they may now be reimbursed, as the holders of priority claims, out of the general funds in the hands of the trustee?

(2) If such right of subrogation exists, can it be enforced with reference to these particular taxing statutes?

The referee decided the first question in the negative and hence declined to pass upon the second.

At the outset it is apparent that the equities seemingly lie with the petitioners, since the payments made by them have relieved the general creditors from depletion of the bankrupt estate consequent upon the enforcement of the statutory priority of the State and City in respect of these imposts; so much is hinted at by the referee, who says: "The State could have filed a claim in this bankruptcy proceeding. But it did not. It chose to call on the claimant to pay pursuant to the three bonds referred to."

It is customary to refer to bankruptcy proceedings as being essentially equitable in nature, which suggests that those who have paid priority claims, not as volunteers but as sureties, in good conscience ought not to be relegated to the position of general creditors, to their own detriment, unless the administration of the law inexorably so requires.

The applicable provisions of the Bankruptcy Act, for ready reference, are:

§ 57 sub. i. "Whenever a creditor whose claim against a bankrupt estate is secured by the individual undertaking of any person fails to prove and file such claim, such person may do so in the creditor's name and, if he discharge such undertaking in whole or in part, he shall be subrogated to that extent to the rights of the creditor." 11 U.S.C.A. § 93, sub. i.

These petitioners seem to fall within the clear purpose of the foregoing.

The referee concedes so much when he says: "There is subrogation as to the claim but none as to the priority accorded by Section 64a(4)." 11 U.S.C.A. § 104, sub. a(4).

That section reads:

"The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be * * *

"(4) Taxes legally due and owing by the bankrupt to the United States or any State or any subdivision thereof: Provided, That no order shall be made for the payment of a tax assessed against any property of the bankrupt in excess of the value of the interest of the bankrupt estate therein as determined by the court; And provided further, That, in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the court;" (Capitalization sic.)

It is difficult to follow the reasoning that the subrogation contemplated by the law constitutes a kind of legalistic molecule which must be resolved into constituent atoms, one of which is labeled "claim" and the other "priority".

That seeems to depict a statutory mirage, for nothing could be more ethereal than subrogation to an unenforceable right.

The priority which pertains to the sovereign is not hedged about by such divinity that it cannot accrue to those who, as sureties, place the government in funds, through the payment of taxes. Dayton v. Stanard, 241 U.S. 588, 36 S.Ct. 695, 60 L. Ed. 1190; Fidelity & Casualty Co. v. Massachusetts Mutual Life Ins. Co., 4 Cir., 74 F.2d 881; In re Baltimore Pearl Hominy Co., 4 Cir., 5 F.2d 553. See also Restatement of the Law—Restitution Sec. 162 f.

It is true that in the foregoing cases the taxes were implemented by a lien upon the property of the taxpayer, thereby rendering collection the more certain; but the creation of a lien is not essential to constituency of a tax as such; New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284.

The referee further observed that, under the section last quoted, it is the duty of the bankruptcy court to determine the amount or legality of any tax, and that no

150

such determination can be had "if the taxing power is not a party to the proceeding". That was the precise circumstance in the last two of the three cases previously cited, and yet the Circuit Court of Appeals for the Fourth Circuit encountered no difficulty in deciding that the right of subrogation to the taxing power had been imparted to those who asserted it. Such right was also recognized as to the priority of a claim of the State, in American Bonding Co. of Baltimore, Md. v. Reynolds, D.C., 203 F. 356.

Further, on this subject, it is possible to. consult with profit United States Fidelity & Guaranty Co. v. Carnegie Trust Co., 161 App.Div. 429, 146 N.Y.S. 804, affirmed, 213 N.Y. 629, 107 N.E. 1087. True, that case did not involve a construction of the Bankruptcy Act but, since the latter in terms creates the right of subrogation on the part of a surety who pays, this exposition of law governing a comparable situation is instructive.

A complication might seem to be suggested if the surety asserted the priority in a case in which the trustee would have been required to put the taxing authorities to the test of demonstrating "the amount or legality of any taxes". The court's duty is stated in the statute and has been judicially sanctioned: New Jersey v. Anderson, supra; Van Huffel v. Harkelrode, 284 U.S. 225, 52 S.Ct. 115, 76 L.Ed. 256, 78 A.L.R. 453; City of Springfield v. Hotel Charles Co., 1 Cir., 84 F.2d 589.

No such question is raised in this record, and it must be clear that a surety, by the mere payment of a tax-claim as presented, could not foreclose the trustee's right to raise such an issue, or the court's duty to determine it; otherwise stated, the right of subrogation is attended by appropriate burdens, which would include the presentation of convincing evidence touching both the legality and the amount of the tax, in such a case as has been suggested.

This is probably what the referee had in mind in referring to the absence of the taxing power from this proceeding.

It is not presently thought that the right of full and complete subrogation as the statute contemplates, can be set at naught.

In re Minogue, D.C., 39 F.2d 239, and In re Green River Jockey Club, D.C., 5 F. 2d 259, cited in the decision of the referee, are not controlling. Neither in those cases nor in any of the decisions cited in the opinions was there a claim asserted on the part of a surety for the taxpayer, The other obvious distinctions do not invite discussion.

Without extending this discussion, it may be permitted to repeat: It seems inequitable that the general creditors here should be permitted to increase their dividends at the expense of sureties for State and City taxes who have paid the amounts thereof, and for that reason the views of the referee do not command acceptance in this court.

Turning now to the second question, which has to do with the nature of the bankrupt's duty under the taxing statutes, namely, whether it was a taxpayer, or merely a collector and indebted solely in that capacity, a brief statement will suffice.

Either the laws involved are to be deemed to fall within the decision of the Circuit Court of Appeals in the Matter of National Studios, Inc., 2 Cir., 118 F.2d 329, decided March 17, 1941, or not.

In that case the City sales tax was interpreted to mean that a bankrupt, being the vendor, was not to be regarded as a taxpayer of the sales tax, but a collector thereof, and only so accountable.

*City Cigarette Tax:* This law (City Administrative Code, Title T, Chapter 41) provides (T–41–2.0, as added by Loc.Laws 1938, p. 286) that a tax shall be paid on every retail sale of cigarettes "upon only one sale of the same package".

*"All dealers shall be liable to the city of New York as taxpayers for the payment of the tax imposed by this section* and shall pay the tax * * * by purchasing * * * stamps * * *. The tax may also be paid by or through the use of * * * metering machines."* (Italics supplied.)

The dealer shall affix a stamp to each package and "each wholesale dealer in the City of New York shall affix such stamps to each package"; refunds are provided for in the event that the packages are shipped into another city or state for sale or use therein or where the packages have become unfit for use or unsalable or have been destroyed.

The legislative purpose that dealers are to be the taxpayers is so clearly expressed that this court does not feel at liberty to disregard it.

The cigarette tax law, when compared with the sales tax law, presents the following contrasts, in addition to the spe-

cific language above quoted, which is not duplicated in the latter:

There is no provision comparable to Section 2 of the sales tax law to the effect that payment of the amount of the tax shall be made by the purchaser to the dealer or vendor; and that failure by the former to pay, or the latter to collect, renders the purchaser liable directly to the City treasurer, to pay and to file a return.

Seemingly the seller of cigarettes bearing tax stamps may absorb the amount thereof in his selling price, or not, and the purchaser from him rests under no duty to pay the tax.

It is concluded therefore that, so far as the instant tax is concerned, the dealer is the taxpayer.

The State Cigarette Tax Act is embraced in §§ 470 to 482, inclusive, of the Tax Law of the State. By § 471, a tax is imposed on all cigarettes possessed in the state "by any person for sale * * * except that no tax shall be imposed on cigarettes sold under such circumstances that this state is without power to impose such tax." Further: "Except as hereinafter provided, *all agents shall be liable as taxpayers for payment of the tax imposed by this article and shall pay the tax to the tax commission* by purchasing, under such regulations as it shall prescribe, adhesive stamps of such designs and denominations as it shall prescribe. * * *" (Italics supplied.)

Under subsequent sections, agents are required to purchase and affix the stamps and cancel the same before the cigarettes are offered for sale.

The statute defines an agent as "any person authorized by the tax commission to purchase and affix adhesive or meter stamps under this article".

■ It seems unnecessary to refer to the other sections, which are largely administrative in character, since the only question here involved concerns the tax liability of this bankrupt, who was an agent within this statute; at least no argument is made to the contrary.

Again, it is to be observed that the statute in terms states that agents are "liable * * * as taxpayers"; again it is thought that this court is not at liberty to decide that the bankrupt is otherwise to be classified, since there is also absent, from the State law, any provision comparable to those found in Section 2 of the Sales Tax of the City, which would impose liability for payment of the tax upon the purchaser of cigarettes.

■ For the trustee, the arguments which would evade the plain wording of the laws are less than convincing. It is said, for instance, that the bankrupt bought stamps which did not represent a tax payment or a taxable liability. This of course ignores the essential nature of the transaction, since the only purpose of buying the stamps was to pay the tax. To avoid that plain aspect of the matter, it is next urged that the use of stamps, "in connection with cigarette tax payments, is a means of regulating the sale of cigarettes within the City of New York (as to the City local laws) and not a means of raising revenue".

If these are not revenue statutes, their purpose has been entirely misunderstood by this court.

Attention is also called to the fact that there is no priority asserted nor is there any lien given for any taxes that might become due; of course, since the taxes were payable by those whose duty it was to affix the stamps, there was no occasion for a lien; nor is it seen how one could attach, in a practical sense, to packages of cigarettes.

It has previously been stated herein that the constituency of a taxing statute, as such, is not thought to require the imposition of a lien on the property of a taxpayer.

Nor is the matter clarified by the efforts to transfer the controversy from the realm of taxation to that of simple contract involving the purchase and sale of stamps and the failure to pay for them. The court is expected to be able to discern the substance of the controversy and not to be beguiled therefrom by preoccupation with the methods employed to collect the tax.

As has been stated, this case either falls within Matter of National Studios, Inc., supra (and In re McCollum, Inc., D.C., 36 F.Supp. 432), or the decision therein is to be deemed controlling only with reference to the City sales tax, and not as to these particular statutes because of the evident legislative purpose to fasten the status of taxpayer upon the bankrupt in this cause.

It is presently the opinion that this bankrupt was a taxpayer under the terms of these statutes and that, if the City and the State had filed their claims with the ref-

eree, priority would have been accorded to them.

These are the matters covered by the referee's certificate of review, and upon consideration thereof the motion to review is granted, and the referee's order and determination with respect to the claims of the United States Fidelity and Guaranty Company and of Goldman, Malter and Goldman are revised so as to provide that the claims of these two claimants be accorded priority in accordance with the prayers of the respective petitioners.

Settle order.